**SOUTHERN PACIFIC TRANSPORTATION CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. Civ. R–77–0180.

United States District Court, E. D. California.

Dec. 5, 1978.

James V. Diepenbrock, Jack V. Lovell, Jr., Carol A. Huddleston, Charity, Kenyon, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for plaintiff.

Herman Sillas, U. S. Atty., Robert Browning Miller, James S. Joiner, Asst. U. S. Attys., Sacramento, Cal., for defendant.

## OPINION

MacBRIDE, Chief Judge.

This is the second of a series of decisions [1] on the choice of law questions presented by this action brought by Southern Pacific Transportation Company (Southern Pacific) under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., against the United States. The issue to be resolved in this decision is the choice of law rule of Nevada. The facts may be stated briefly. On April 28, 1973, 18 DODX railcars owned by the United States laden with bombs being transported by Southern Pacific from Nevada to Port Chicago, California under a contract with the Department of the Navy exploded in Southern Pacific's Antelope trainyard near Roseville, California. The explosions caused major damage to the trainyard and the surrounding area. As a result, hundreds of lawsuits were filed against Southern Pacific, the United States, and various other defendants. In addition, Southern Pacific sued the United States under the Federal Tort Claims Act (FTCA) to recover, inter alia, for damage to the trainyard, railcars and their lading, loss of freight revenues, loss of use of property and capital, and sums paid in settlement of third-party claims. The United States counterclaimed for the loss of its boxcars and the bombs. In the intervening years, all lawsuits arising from the explosions have been settled except for the FTCA action by Southern Pacific and the United States' counterclaim. Trial on that action began on November 7, 1977 and is continuing at this time.

Choice of law problems have permeated the various questions presented to this court by the litigation. Alleged negligent acts and omissions occurred in Nevada and California, and to a significantly lesser extent in other states. The FTCA provides a choice of law rule governing this action in section 1346(b):

1. The first of the choice of law decisions, filed November 28, 1978, concerned whether a federal common law of railroad tort liability should govern the question of liability in this action to the derogation of otherwise applicable state law doctrines of tort liability. This court held that, although the FTCA would not preclude the application of preemptive federal common law in an appropriate case, the federal regulation over interstate rail transportation and hazardous materials was not intended to preempt the standards of liability provided by state law.

the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

As the Supreme Court held in *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), this section requires the application of the whole law, including the choice of law rules, of the state where the negligent act or omission occurred. In the usual case, the negligent act or omission and the resulting injury all occur in a single state, and there is generally no dispute as to the applicable law. In this instance, negligent acts or omissions are said to have occurred in a number of states, although the parties concede that the only real dispute is between the states of Nevada and California. Acts and omissions in other states, even if determined to be negligent, are relatively few in number and are also scattered among a variety of states. For these reasons, the parties have long operated on the assumption that application of the *Richards* test would result in the selection of either Nevada or California as the state whose whole law would be applied.

The difficulty with which the parties and the court have been faced is that *Richards* requires the application of the whole law of the state where the negligent act or omission occurred. That test necessitates a decision as to the negligence *vel non* of the various acts. Thus, in this case, although there is little dispute either as to the fact that certain acts occurred in the chain of events leading to the explosions or as to the location of those acts, there has been strong disagreement as to the question whether

the acts were negligent. The evidence necessary to determine the negligence of the acts amounts, in effect, to the major portion of the evidence to be presented during the trial. For that reason, it has not been possible to reach even a tentative choice of law decision under the *Richards* test. As the Southern Pacific's case-in-chief neared its close, the parties and the court concluded that it would be possible to reach an interlocutory decision on choice of law based on the evidence presented in the case-in-chief as to the negligent character of the relevant acts. This decision, of course, would be subject to amendment depending on the evidence presented by the United States in defense.[2] Accordingly, the parties prepared to brief the choice of law issues in the context of the evidence so far presented. At that time, a question arose as to the applicable choice of law rules of the state of Nevada, the question which is to be resolved in this decision.

Although no decision had ever been reached on the point by this court, both parties had assumed that the applicable Nevada rule was to be found in the Restatement (Second) of Conflicts, based on the Ninth Circuit's decision in a defamation action, *Hanley v. Tribune Publishing Co.,* 527 F.2d 68 (9th Cir. 1975). Southern Pacific recently concluded, however, that this assumption was incorrect and that Nevada would apply the *lex loci* rule to interstate negligence actions. Application of the Restatement (Second) of Conflicts approach requires consideration of a number of factors specified in the Restatement as they apply to the facts of the case; these factors include the places of the injury and of the negligent conduct, the domicile of the parties, the place where the relationship between the parties is centered, the policies of the forum and of the other interested states, and the basic policies underlying the particular field of law. In contrast, the *lex loci,* or *lex loci delictus commissi,* approach requires the application of the law of the

2. See Fed.R.Civ.Pro. 54(b) ("any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims . . . .").

place of the wrong, that is, the law of the place where the negligence had its operative effect.

Because of the question as to the applicable Nevada law, the briefing on the application of the evidence so far presented to the choice of law rules of California and Nevada has been suspended pending a decision on the nature of the choice of law rule in Nevada. The only issue before the court at this point is whether Nevada would apply the *lex loci* rule, the Restatement (Second) of Conflicts approach, or some other choice of law rule to an interstate tort action under the circumstances presented to this court.

### (1) *The Ninth Circuit's* Hanley *Decision*

The starting place for discussion is the Ninth Circuit's decision in *Hanley*, a diversity action brought in the Nevada federal district court by a Nevada domiciliary against the defendant-newspaper publishing company which published a newspaper in Oakland, California but distributed and sold the paper in Nevada. The plaintiff sought general damages for an alleged libel published in May, 1969; the complaint did not allege that plaintiff suffered any special damages. Under California law at the time of publication, recovery was limited to special damages unless correction of the alleged libel was demanded and was not provided. The plaintiff alleged no demand for correction of the libel. The law of Nevada was in the process of change: in April 1969, a statute to the same effect as the California limitation was enacted and approved by the Governor of Nevada, but the effective date of the statute was in July 1969. Thus, as of the date of the publication, Nevada had no statute in effect limiting recovery to special damages in the absence of an unfulfilled demand for correction. After providing this factual background, the Ninth Circuit stated:

> The district court concluded that the Nevada conflict of laws rule would follow that set forth in the Restatement of the Law (Second), Conflict of Laws § 379e (Tentative Draft No. 9, 1964). We agree.

By this rule the law to be applied is that of the state having the most significant relationship with the parties and the communication, and ordinarily would be that of the domicil of the plaintiff.

*Id.* at 69 (footnote omitted). The Ninth Circuit then proceeded to apply the choice of law approach set forth in the Restatement.

The district court reached the conclusion that application of the Restatement's choice of law rule resulted in a requirement that the substantive law of California apply to the case. The court reached this conclusion in part because California was the state of defendant's incorporation and principal place of business and the state in which the newspaper was composed, printed and published. The "most significant factor" in the district court's view, however, was that the April enactment of the Nevada statute limiting recovery to special damages expressed the public policy of Nevada. Thus, the district court concluded: "it is appropriate that the law of the State of California should be selected to sustain the declared and identical public policies of both states with respect to actionable defamation." *Id.* Accordingly, when the plaintiff did not amend his complaint to allege special damages or a demand for correction, the district court dismissed the action, and the plaintiff appealed.

After agreeing with the district court that the Nevada choice of law rule was to be found in the Restatement (Second) of Conflicts, the Ninth Circuit stated:

> As the district court recognized, under choice of law principles the respective substantive rules under consideration traditionally compete on the basis of the interests of the respective states with regard to the particular controversy. . . .
> In the case of tort actions, relevant factors include the nature of the wrong that is alleged; the place where the harm was actually suffered; the place where the extent of the injury can best be appraised. Restatement of the Law (Second), Conflict of Laws § 145 and Comments thereto. In cases of defama-

tion, these factors normally would call for application of the law of the plaintiff's domicil. . . .

In our view the contacts specified by the district court do not warrant deviation from this general rule. To give substantial weight to the fact that California is the state of defendant's incorporation and principal place of business, and in which its newspaper is published, is to undermine the generally accepted premise that the state where injury was suffered is a more appropriate choice than is the state from which the harm emanated. What the court regarded as the most significant factor should not have had consideration at all; in relying on it the court misconstrued the state of Nevada policy at the critical time of publication. If deference is, as it should, to be given to Nevada's declared policy, it should be by application of Nevada law, for it is to the law of a state that we turn in order to ascertain that state's policy. At the time of publication Nevada law was contrary to that of California. Adopting California law out of deference to Nevada policy thus operated, in unjudicial fashion, to change the substantive law of Nevada so that retroactive effect was given to a statute to which the Legislature had given a fixed effective date.

*Id.* at 70 (footnote omitted). For these reasons, the Ninth Circuit held that Nevada would apply the general conflicts rule that the law of the plaintiff's domicile should control in defamation actions and ruled that the substantive law of Nevada at the date of publication should be applied. Accordingly, the Ninth Circuit reversed and remanded the case to the district court.

(2) *The Precedential Effect of the* Hanley *Decision*

Southern Pacific offers a number of grounds on which this court should conclude that *Hanley* has no precedential effect herein as to Nevada's use of the Restatement approach. The first of these is that the Ninth Circuit's reference to the applicability of the Restatement is dicta that may be discarded. This argument is wholly with-

out merit: the Ninth Circuit explicitly agreed with the district court's conclusion that the Nevada choice of law rule was to be found in the Restatement *and* the Ninth Circuit proceeded to apply the Restatement rule to the facts of the case. The court's interpretation and application of the factors made relevant by the Restatement approach directly resulted in the reversal of the district court's decision. For that reason, the Ninth Circuit's conclusion that Nevada's choice of law rule was to be found in the Restatement cannot be characterized as dicta.

Southern Pacific's second argument is that *Hanley* cannot provide precedent on a point not presented to the court and not specifically decided. This argument derives from the legal maxim declared in *Webster v. Fall*, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411 (1925), in which the Court held that the action should have been dismissed for failure to join a necessary party, the Secretary of the Interior. The Court stated:

Counsel for appellant directs our attention to other cases, where this court proceeded to determine the merits notwithstanding the suits were brought against inferior or subordinate officials without joining the superior. We do not stop to inquire whether all or any of them can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Id.* 266 U.S. at 511, 45 S.Ct. at 149, 69 L.Ed. at 412–13. *Webster* was quoted and followed in *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1160 (9th Cir. 1976), and in *Soyka v. Alldredge*, 481 F.2d 303, 306 (3d Cir. 1973). *See also United States v. Mitchell*, 271 U.S. 9, 12, 46 S.Ct. 418, 419, 70 L.Ed. 799, 802 (1926); *Mead v. Retail Clerks Int'l Ass'n*, 523 F.2d 1371, 1374 (9th Cir. 1975). As is clear from the Ninth Circuit's

*Hanley* decision, the court examined no Nevada cases or authorities in concluding that Nevada's rule was to be found in the Restatement. Examination of the briefs submitted to that court reveals that the question of Nevada's choice of law rule was not presented to the Ninth Circuit; the parties merely operated on the assumption that the rule was that in the Restatement. Plaintiff's brief stated the issue as follows:

> a question of conflict of laws which may be briefly stated as follows:

>> Whether the liability of the publisher of a newspaper, which is printed in California but is widely circulated in Nevada, for publishing in that newspaper libelous and defamatory statements of and concerning a citizen and resident of Nevada is to be determined by the laws of the State of California or by the laws of the State of Nevada.

> The court below held that the laws of the State of California applied. Appellant, the plaintiff below, contends that the laws of the State of Nevada apply.

Brief of the Plaintiff, at 1, *Hanley v. Tribune Publishing Co.*, 527 F.2d 68 (9th Cir. 1975). Later in that brief, the plaintiff stated:

> The question remains, and it is the principal one presented by this appeal: What law, in the case of a multi-state publication, governs the cause or right of action.

> On this subject, Section 150 of the Second Edition of the Restatement, Conflict of Laws (1971) provides as follows [omitting quotations from the Restatement].

> Under the foregoing rules, which are in accord with the modern decisions on the subject (see Annotation 23 A.L.R.2d 658), the law of Nevada and not the law of California must be applied in determining the rights and liabilities of the parties to this action.

*Id.* at 7, 10. The defendant responded with the following discussion:

> Plaintiff urges that the District Court should have selected and applied the law of the State of Nevada . . . and relies heavily upon Section 150 of the

Second Edition of the *Restatement Conflict of Laws* (1971) . . . . Rather than establish the proposition that the law of the domicile should be applied in multi-state defamation cases, the *Restatement* proposes that the local law of the state which . . . "has the most significant relationship to the occurrence and the parties . . ." should be applied. . . . The *Restatement* does not, in fact, urge a different proposition of law than that applied by the District Court.

Brief of the Defendant, at 5–7, *Hanley v. Tribune Publishing Co.*, 527 F.2d 68 (9th Cir. 1975). These briefs lead to the conclusion that the court and the parties focused their attention on the interpretation of the factors provided in the Restatement rule, not on the preliminary question whether the Restatement rule was the applicable Nevada law. This conclusion is supported by the briefs presented to the district court and that court's decision. The parties did not discuss the nature of Nevada's choice of law rule in their briefs to the district court. *See* Briefs of the Defendant, *Hanley v. Tribune Publishing Co.*, Civ.No. LV–1509 (D.Nev., filed Feb. 18 and Mar. 11, 1971); Brief of the Plaintiff, *Hanley v. Tribune Publishing Co.*, Civ.No. LV–1509 (D.Nev., filed Mar. 2, 1971). The district court's discussion of the question is as follows:

> Modern precedent supports the principle that the rights and liabilities of the parties should be determined by the local law of the state which has the most significant relationship with the parties and the communication. This is usually the state of plaintiff's domicile. Restatement Conflict of Laws, 2nd, Tentative Draft No. 9, Section 379e. In exceptional situations, however, other factors influence the choice of law. "In determining the state with which an issue has its most significant relationship, attention should be directed, among other things, to the kind of tort involved and to the purpose to be achieved by the relevant tort rules of the interested states." Restatement, supra, p. 49.

*Hanley v. Tribune Publishing Co.*, Civ.No. LV–1509, at 4 (D.Nev., filed May 26, 1971).

■ This court is unable to find any indication that the preliminary question of the applicable Nevada choice of law rule was ever presented to or considered by the district court or the Ninth Circuit in *Hanley*. Every indication is that both courts assumed for reasons not stated or discernable that Nevada's rule was found in the Restatement and directed their attention to the interpretation of the Restatement factors. Thus, *Hanley* is similar to the prior Supreme Court cases noted in *Webster*; in each instance, the courts' holdings are grounded on a preliminary conclusion that can have no precedential effect. Accordingly, this court finds that, to the extent that the Ninth Circuit concluded that Nevada's choice of law rule was to be found in the Restatement, *Hanley* provides no precedent applicable in the instant case.

■ Having concluded that *Hanley*'s selection of the Restatement as Nevada's choice of law rule is without precedential value, this court need not consider Southern Pacific's argument that *Hanley* is limited in application to defamation cases and so would not apply to negligence actions. The question now before the court is what choice of law rule would Nevada apply to an interstate negligence action similar to that in the instant case. The obligations placed on the court to determine state law under the FTCA parallel the obligations that obtain in an action based on diversity jurisdiction. Although state law applies of its own force in the diversity case and is adopted into federal law in an FTCA action, in both instances, the federal court is charged with the responsibility of ascertaining what state law is, not what it ought to be. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 495, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480–81 (1941); *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346–47 (9th Cir. 1974); *Chavez v. Southern Pacific Transportation Co.*, 413 F.Supp. 1203, 1206 (E.D.Cal.1976).

■ Before examining the Nevada decisions on point, it is essential to keep in mind the obligations of a federal court in determining what the governing state law is on a given subject. Southern Pacific directs the court to the Ninth Circuit's decision in *Klingebiel*, on which this court previously relied in the *Chavez* decision. The *Klingebiel* court, faced with a question of California law, declared:

the duty of the federal court is to ascertain and apply the existing California law, not to predict that California may change its law and then apply the federal court's notion of what that change might or ought to be. The proper fora in which to seek to change California law are the California legislature and the California courts, not the federal courts. Only when the question has not been decided in California do we have the doubtful privilege of "first guessing" what the California courts might do.

*Klingebiel v. Lockheed Aircraft Corp.*, *supra* at 346–47 (footnotes omitted). In the same year, the Ninth Circuit considered an argument that it should look to states other than the one whose law applied in order to establish the law of the case. The court refused that invitation in *Kovacs v. Sun Valley Co.*, 499 F.2d 1105, 1106 (9th Cir. 1974), stating: "It is not the province of a federal court to look beyond the designated state for the purpose of predicting changes which may or may not occur in that state's law." These restrictions on the power of the federal courts apply to the determination of state choice of law rules. For example, in *Alaska Airlines, Inc. v. Lockheed Aircraft Corp.*, 430 F.Supp. 134 (D.Alaska 1977), the question arose whether statutes of limitation were regarded as procedural, such that the law of the forum would apply, or substantive, such that another state's law might govern under the applicable choice of law rules. The court noted that "the most recent decision on choice of law regarding statutes of limitation" had been in 1967 and that the "opportunity for the Alaska Supreme Court to adopt a more modern approach to choice of law questions has not presented itself." *Id.* at 139. In 1968, however, the Alaska Supreme Court "explicitly

reserved for future consideration the question of whether it would adopt one of the more modern choice of law approaches." *Id.* With that reservation in mind, the district court declared:

> In the area of choice of law the intervening nine years since the Alaska Supreme Court last spoke to this issue have been years of tremendous revolution. While the rule announced [in 1967] may now be outdated it is a relatively recent authoritative expression of the highest court in Alaska on the law applicable to the facts of this case and the court is bound by it. *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239, 245 (5th Cir. 1974), cert. den. 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451; See generally 1A *Moore's Federal Practice,* ¶ 0.309[1].
>
> Professor Moore suggests that blind adherence to outdated state precedent is not always proper. *Moore's Fed.Prac., supra.* In the area of conflicts, however, where at least two major modern approaches are viable it is not possible to predict how the Alaska Supreme Court would decide this question today. In the absence of a certification procedure the court, therefore, must follow this precedent.

*Id.* at 139–40 (footnotes omitted).[3]

These decisions provide the framework within which this court must examine the pertinent Nevada cases on choice of law. The decision here is not easy in view of the present status of Nevada law on the subject. This court will first examine the *lex loci* decisions of the Nevada Supreme Court that Southern Pacific contends remain the governing law. Thereafter, the court will consider the single decision that might detract from a conclusion that *lex loci* still applies in Nevada.

**3.** In the *Delta Air Lines* decision on which the district court relied, the court declared:

we are bound to follow state law, whether or not we agree with the reasoning upon which it is based or the outcome which it dictates. This is the ultimate significance of the *Erie* decision. [*Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]. Delta has not cited us to any subsequent California decisions criticizing, distinguishing, or modifying the *Douglas* case [*Delta Air Lines, Inc.*

### (3) *Nevada's* Lex Loci *Decisions*

Southern Pacific relies on four decisions by the Nevada Supreme Court between 1941 and 1965 arising from automobile accidents and, most recently, a plane crash, in which the court faced choice of law questions. The first of these decisions is *Mitrovich v. Pavlovich,* 61 Nev. 62, 114 P.2d 1084 (1941). Plaintiff-Mitrovich had accompanied the defendant and two others on a pleasure trip from Nevada into California to visit a mutual friend; the trip ceased to be pleasurable when defendant lost control of the car in Lassen County, California and plaintiff was injured. Under California's guest statute, no person who accepted a ride as a guest had a right of action for damages in the absence of proof that the injury resulted from intoxication or wilful misconduct. The Nevada Supreme Court declared: "As the accident occurred in California we must reach a decision from a consideration of the facts in the light of California law." Applying the definition of "wilful misconduct" used by the California courts, the Nevada court held that plaintiff had failed to make the required showing and affirmed the judgment of the trial court for defendant.

Eleven years later, the Nevada Supreme Court again ruled on choice of law in a similar case: *Campbell v. Baskin,* 69 Nev. 108, 242 P.2d 290 (1952). Plaintiff-Baskin accepted defendant's invitation for a joint fishing trip to Arizona; they left together from the Baskin residence in Las Vegas. After several hours of fishing, they left the stream at dusk in Campbell's car, Baskin riding as a passenger, and drove several miles in Arizona when the accident oc-

*v. Douglas Aircraft Co., Inc.,* 238 Cal.App.2d 95, 47 Cal.Rptr. 518]. Therefore, *Douglas* remains the latest, most authoritative expression of California law applicable to the facts of this case. It is controlling for our purposes.

*Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239, 245 (5th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *accord, Shaw v. McCorkle,* 537 F.2d 1289, 1295 (5th Cir. 1976).

curred. The ensuing tort action resulted in a judgment for plaintiff, and defendant appealed. Although there is no indication in *Mitrovich* that the choice of law question was in dispute, the question was hotly disputed in *Campbell* because Arizona, unlike California and Nevada, had no guest statute. The Nevada Supreme Court discussed the matter as follows:

> Defendant's next contention is that the court erred in applying to the accident the law of the state of Arizona rather than that of Nevada. Under [Nevada law], a guest may not recover for personal injuries in absence of "intoxication, willful misconduct, or gross negligence of such owner, driver, or person responsible for the operation of such vehicle." Arizona has no such statute and a guest may recover upon proof of simple negligence of the person responsible. In its decision the trial court stated "that the evidence failed to show wanton, willful or gross negligence on the part of the defendant, but that plaintiff's allegations with respect thereto were sufficient to include a charge and support a finding of simple negligence." The accident having occurred in Arizona it is clear that Arizona law applies. *Mitrovich v. Pavlovich,* 61 Nev. 62, 114 P.2d 1084.
>
> Defendant contends, however, that the trip was a joint venture being one of many excursions and that under these circumstances the venture having been undertaken from Nevada the law of Nevada should apply. We need not decide whether under a proper showing of joint venture the law of Nevada would become applicable. The trial court specifically found "that it is not true that [plaintiff and defendant] were engaged in a joint enterprise . . . ." Under the facts recited at the outset of this opinion it cannot be said that such findings were without support.

*Id.* 242 P.2d at 294. The Nevada Supreme Court affirmed the judgment for the plaintiff.

The *Campbell* decision was followed without discussion in *Karlsen v. Jack,* 80 Nev. 201, 391 P.2d 319 (1964). In this case, plaintiff-Jack was driving her car on the freeway near Truckee, California. At a narrow portion of the freeway, defendant-Ball Sign Company's truck was parked on the right shoulder while two of the company's employees were preparing to paint a private sign. As plaintiff approached the truck, defendant-Eshelman, who was driving in the outer lane while plaintiff was on the inner, cut in front of plaintiff. Plaintiff's attempt to avoid a collision resulted in loss of control of her car and her injuries. At trial, the jury awarded damages to plaintiff, and the company appealed. The only question raised on appeal was whether the admitted negligence in parking the sign truck in that location was a proximate cause of the injuries. *Id.* 391 P.2d at 320. In its opening statement on the question, the court declared:

> The accident having occurred in California, the California law pertaining to negligence and proximate cause is controlling. *Campbell v. Baskin,* 69 Nev. 108, 242 P.2d 290.

*Id.* The remainder of the decision applies California law and concludes by affirming the award of damages.

Although the *Karlsen* decision itself would seem to indicate that the parties did not dispute the choice of law, examination of the briefs filed before the Nevada Supreme Court reveal that the court did focus on choice of law issues. Defendants' opening brief on appeal did not discuss choice of law; instead, it directed the court's attention to cases involving similar facts decided in eleven different states. Opening Brief for Appellants, at 11–25, *Karlsen v. Jack, supra.* In response, plaintiffs urged:

> It is important at the outset to emphasize that the issues involved in this appeal must be resolved by reference to the law of the State of California [because] the accident in question occurred . . . in the State of California.

> . . . . .

Even a cursory review of the written opinions of the appellate courts of the

State of California will convince the reader that the courts of the State of California make reference to the opinions of the appellate courts of the sister states only in extremely novel cases, or those of first impression in the State of California. In all other cases, the courts rely solely upon the decisions previously made in the Supreme Court and the various District Courts of Appeal. Accordingly, in the event there are determinative decisions of the appellate courts of the State of California, these decisions must be followed rather than the decisions of the other sister states. Naturally, decisions of the Supreme Court of the State of Nevada will be persuasive in this appeal. However, the decisions of the other sister states cannot be considered authoritative or even persuasive inasmuch as the rights of the Plaintiffs-Respondents must be *determined* as nearly as possible as if the case had been tried and decided in the State of California.

Answering Brief for Respondents, at 10–12, *Karlsen v. Jack, supra.* Defendants contended that this argument should be rejected.

> the decisions by California appellate courts can have no more persuasive power than those of any other courts. The trial court and this court are not hampered in considering this case for decision as a matter of law. We note here that all parties in the case are Nevada citizens.

Reply Brief for Appellants, at 2, *Karlsen v. Jack, supra.* An examination of the *Karlsen* decision reveals that the court accepted plaintiff's argument, relying on the California decisions only. Although *Karlsen* was not a case in which the applicability of the *lex loci* rule was greatly disputed, nonetheless, the fact that it was in controversy even to a limited extent indicates that *Karlsen* is of greater precedential value on the question before this court than the decision itself reflects.

The final decision on which Southern Pacific relies is *Lightenburger v. Gordon,* 81 Nev. 553, 407 P.2d 728 (1965), a wrongful death action by the widow and children of Lightenburger who was killed in a plane crash at the Los Angeles International Airport. The defendant-Gordon and one Bigelow were associated in a business venture which built, furnished and rented apartments in Las Vegas. Gordon had reached a tentative agreement with the Carrington Carpet Company of Las Vegas that Carrington would furnish the apartments. Lightenburger was employed by Carrington, and he arranged for Gordon and Bigelow to inspect the proposed furnishings in Los Angeles. Although the original plan was for the parties to travel on a commercial airline to Los Angeles, plans were changed and Carrington, Lightenburger and Bigelow took off from Las Vegas in Gordon's airplane with Gordon as pilot. The plane crashed in heavy fog in Los Angeles. The case came before the Nevada Supreme Court on appeal by plaintiffs after a judgment for defendants.

The Nevada Supreme Court justices were agreed that errors in the jury instructions mandated a new trial of the case; the justices disagreed as to the propriety of certain of the instructions with the result that two opinions were issued. The initial opinion is by Justice Wines; although it is the minority decision, it deals generally with the facts of the case and precedes the "concurring" opinion by Justices Thompson and Badt. That concurring opinion notes that "the main dispute on appeal is over certain of the jury instructions given regarding the alternative theories of liability under California law," and states:

> The crash occurred in California, and substantive law of that state was deemed controlling by the litigants. The trial proceeded with California law in mind. *Mitrovich v. Pavlovich,* 61 Nev. 62, 114 P.2d 1084 (1941); *Campbell v. Baskin,* 69 Nev. 108, 242 P.2d 290 (1952). Thus, we are not presented a choice of law problem. Cf. *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172

N.E.2d 526 (1961); *Pearson v. Northeast Airlines, Inc.*, 2 Cir., 307 F.2d 131 (1962).

*Id.* 407 P.2d at 743.[4]

Justice Wines' decision provides additional insight into the application of California law. One of the jury instructions at issue specified the factors to be considered in determining whether Lightenburger was to be deemed a passenger or a guest on the plane. Justice Wines stated:

> In California if a person provides transportation to another with the anticipation that a benefit to him will follow the person transported has the status of a passenger and is not a guest. [California citations omitted]. This appeals as a sensible proposition and we see no justification in adopting a different rule in Nevada where in fact the transaction resulting in the furnishing of transportation occurred in this action.

*Id.* 407 P.2d at 736–37.[5] Justice Wines rejected plaintiffs' objections to the instruction without further discussion of the applicable law. The next objection concerned an instruction that the regulations of the Federal Aviation Agency were to be a guide to the jury in determining whether certain maneuvers were negligent. Justice Wines agreed with plaintiffs:

> Assigning the regulations the rank of guide in determining whether the fact the maneuvers were performed, "was negligence or non-negligence," is an offense to the California law that compliance with an administrative safety regulation, though evidence for the jury to weigh in determining the issue of care, does not absolve the defendant from negligence. [California citations omitted].

*Id.* 407 P.2d at 738. The plaintiffs also objected to an instruction on the definition of willful misconduct. On this point, Justice Wines stated:

> The Appellants argue that the law of the State of California is applicable. *Mitrovich v. Pavlovich*, 61 Nev. 62, 114 P.2d 1084; *Geller v. McCown*, 64 Nev. 102, 177 P.2d 461, 178 P.2d 380. The Respondents did not answer to this proposition and we adopt the Appellants' view that California law applies.

*Id.* 407 P.2d at 739. Upon examination of California law, the judge agreed with the plaintiffs on this issue. Despite the differences in interpretation in the two opinions as to specific issues, the justices all agreed that a new trial was mandated. Moreover, all three justices indicated that they proceeded on the assumption that California law applied based on the fact that the parties themselves agreed on that point.[6]

4. It is difficult, if not impossible, to draw any conclusions from the court's citation to the *Kilberg* and *Pearson* cases, two decisions arising from an airplane crash in Massachusetts. The plane had taken off from New York, and the plaintiffs in the two actions were New York domiciliaries. One of the issues presented in both *Kilberg* and *Pearson* was whether the Massachusetts wrongful death limitation on recovery should apply to actions by New York residents. It may be that the *Lightenburger* decision cited to these decisions merely as examples of cases in which courts had been presented with disputes as to the applicable law.

5. This and other quotations from the portion of the *Lightenburger* decision written by Justice Wines use the word "we" in stating the conclusion reached. In other places, the word "I" is used; for example, the closing paragraph of Justice Wines' opinion reads as follows:

> We have not agreed in every instance on the merit of the Appellants' protests. If our views are dissident in that aspect, they are not on the necessity for a new trial. I think the failure of the trial court to properly instruct or rule on evidence on any single major issue, such as the identity of the person at the controls at the time of the crash, . . . would be sufficient cause to order a reversal. The cumulative effect impresses my colleagues. [citation omitted]. And so having had our say, we reverse and remand for a new trial.

*Id.* 407 P.2d at 742. In view of the alternating use of the words "we" and "I," it is not clear whether the portions of Justice Wines' opinion relevant in the instant case using the term "we" reflect the conclusions of the three justices.

6. Examination of the briefs filed by the parties reveals no dispute as to the applicable choice of law rules. Defendants' brief states:

> A. CALIFORNIA LAW IS APPLICABLE.
>
> The Nevada Conflicts of Law Rule provides that a law of the place of the accident applies to the consideration of the guest statute and the standard of care thereunder. *Mitrovich*

The *Lightenburger* case returned to the Nevada Supreme Court after the retrial, again on appeal by the plaintiffs. The court briefly described the history of the action, commenting in part that "[e]ach trial was presented to the court and jury on the basis of California law." *Lightenburger v. Gordon*, 89 Nev. 226, 510 P.2d 865, 866 (1973). The court did not resolve the specific issues raised on appeal because a change in California law required a new trial in any event: after the appeal had been briefed, argued and submitted, the California Supreme Court ruled in *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973), that the California guest statute governing automobile guests was unconstitutional. The Nevada Supreme Court held that the *Merlo* decision effectively voided the parallel California airplane guest statute. For that reason, the court remanded for a third trial in which the plaintiffs would have the right to seek to recover without regard to Lightenburger's status as a guest. *Lightenburger v. Gordon, supra*, 510 P.2d at 867.

Southern Pacific points out that Tentative Draft No. 8 of the Restatement (Second) of Conflicts had been available for more than a year when the Nevada Supreme Court decided *Karlsen v. Jack* in 1964. The Draft is dated April 15, 1963, so it had, in fact, been available for exactly a year when the *Karlsen* decision was handed down. Although differences exist between Tentative Draft No. 8 and the final version of the Second Restatement as to the sections pertinent to interstate torts, there are no major variances in the significant relationship test between the two versions.

Similarly, when the first *Lightenburger v. Gordon* decision was handed down on November 10, 1965, Tentative Draft No. 9 of the Second Restatement had been available for almost 18 months. Moreover, the Restatement (Second) of Conflicts was adopted by the American Law Institute on May 23, 1969, so it had been available in final form for several years prior to the Nevada Supreme Court's second *Lightenburger* decision in 1973.

▮ Care must be taken not to ascribe too much significance to the silence of another court on a point. Of the four *lex loci* decisions by the Nevada Supreme Court, the only one in which the question of choice of law was directly in dispute is the 1952 decision in *Campbell v. Baskin*. The 1964 *Karlsen* decision is of some precedential value that the Nevada Supreme Court adhered to the *lex loci* rule, but it cannot be given great weight. Moreover, in both *Lightenburger* decisions, it is clear that the parties and the court proceeded on the assumption that California law applied. Thus, both *Lightenburger* decisions and *Karlsen* are subject to the same objection as was the Ninth Circuit's *Hanley* decision. Nonetheless, Southern Pacific refers to *Karlsen* and *Lightenburger* as instances in which "the Nevada Supreme Court rejected the opportunity to adopt a more modern approach to choice of law in negligence actions and adhered to the *lex loci* rule." Southern Pacific's Brief, filed October 4, 1978, at 13. These decisions cannot, however, be read as conscious rejections of modern conflicts rules or as conscious determinations to adhere to the *lex loci* rule.[7]

---

*v. Pavlovich*, S.Ct.Nev. (1941) 61 Nev. 62, 114 P.2d 1084. This rule is applicable even though both plaintiffs and defendants are residents of the State of Nevada and the law of the foreign jurisdiction is entirely different from the law of Nevada. *Campbell v. Baskin*, S.Ct.Nev. (1952) 69 Nev. 108, 242 P.2d 290.

Brief of Respondent, at 11, *Lightenburger v. Gordon*, 81 Nev. 553, 407 P.2d 728 (1965). Plaintiffs' brief made no responsive comment. Reply Brief of Appellants, *Lightenburger v. Gordon*, 81 Nev. 553, 407 P.2d 728 (1965).

7. Southern Pacific points out that such cases as *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y. S.2d 743, 191 N.E.2d 279 (1963), which rejected the *lex loci* rule, generated volumes of scholarly comment so that the more modern approaches to conflicts of laws in tort cases were well known and widely discussed when the Nevada Supreme Court ruled in *Karlsen* and *Lightenburger* in the mid-1960s. It is doubtful, however, that any conclusions should be drawn from the fact that the court was, almost certainly, conscious of the development of modern conflicts of law rules at the time of the *Karlsen* and *Lightenburger* decisions.

Interpretation of the force and effect of decisions like *Karlsen* and *Lightenburger* is difficult because of the lack of dispute among the parties in those cases and the court's seeming acquiescence in the choice of law conclusions reached by the parties. On the one hand, the decisions may be deemed to have no precedential value for the same reasons that this court has concluded that *Hanley* is without precedential value insofar as it held that Nevada's choice of law rule was to be found in the Restatement (Second) of Conflicts. On the other hand, the decision as to the applicable law is a legal conclusion, and the Nevada Supreme Court has held:

> Parties may stipulate to facts but they may not stipulate to the law. Such stipulations as to the law will be disregarded.

*Ahlswede v. Schoneveld,* 87 Nev. 449, 488 P.2d 908, 910 (1971), *citing, inter alia, Beko v. Kelly,* 78 Nev. 489, 376 P.2d 429 (1962). This court is under an obligation to ascertain and apply existing Nevada law, and the *Karlsen* and *Lightenburger* decisions must be accorded some measure of deference as expressions of existing Nevada law. That deference is necessarily limited in view of the lack of substantial dispute and the absence of an explicit determination to retain the *lex loci* rule.

This court's independent research brought to light additional Nevada cases in which the court apparently applied the *lex loci* rule without discussion or in which the court was presented with an opportunity to discuss the rule but which are equivocal as to the choice of law decision. Primary among these is *Pearce v. Boberg,* 87 Nev. 255, 485 P.2d 101 (1971), *further decision,* 89 Nev. 266, 510 P.2d 1358 (1973). This action, brought by Boberg against Pearce and his father, arose from a single car accident in Nevada. Pearce and Boberg left California together in Pearce's father's car on their way to Idaho to be married. En route, the accident occurred in Nevada; a few days later Pearce and Boberg were married. Still later, Boberg sued in the Nevada courts for damages. The case first reached the Nevada Supreme Court on appeal from a denial of a motion to change the place of trial from Reno to Lovelock, near where the accident occurred. In that 1971 decision, the court noted that the parties all lived in California. In 1973, the case again came before the court, on the question whether Nevada's rule that a wife may not sue her husband for personal torts should be rejected. The court declined the invitation to reconsider the rule because the accident occurred prior to the marriage. The court proceeded to apply Nevada law to the case, although there is no indication whatsoever of any connection with Nevada other than the fact that the accident occurred there and that Nevada was the forum. Perhaps the case is explainable solely on the ground that a court will generally apply forum law in the absence of a motion to apply foreign law. Other cases exist wherein the court was given an opportunity to examine its choice of law rules, based on the facts, but the decision has no explicit discussion of choice of law and no indication can be drawn from the court's language. *E. g., Hartford Insurance Group v. Winkler,* 89 Nev. 131, 508 P.2d 8 (1973) (accident in Utah). It may be that the only conclusion to be drawn from these cases is that the Nevada Supreme Court has not affirmatively sought out an opportunity to announce a change in the *lex loci* rule.

### (4) The Tab Construction Decision

Both Southern Pacific and the United States recognize that the line of *lex loci* decisions by the Nevada Supreme Court is subject to question because of the court's 1967 decision in *Tab Construction Co. v. Eighth Judicial District Court,* 83 Nev. 364, 432 P.2d 90 (1967). The company sought a writ of prohibition to prevent the lower court from proceeding in a civil action for damages on the ground that Nevada's Industrial Insurance Act provided a full and exclusive remedy such that the lower court was without jurisdiction. Neither party disputed that Nevada law would prohibit the civil action, but the respondent contended that the action was based on Arizona law which would not prohibit such an action under the circumstances. The Nevada Supreme Court stated the facts as follows:

On April 26, 1967, the petitioner, Tab Construction Company, a Nevada corporation, was the general contractor engaged in construction on the Bonanza Underpass in Las Vegas, Nevada. The Horizontal Boring and Tunnel, Inc., an Arizona corporation, was a subcontractor performing work for the petitioner on the Bonanza Underpass. Christopher J. Giacona, a resident of Arizona, and an employee of Horizontal Boring and Tunnel, Inc., while acting in the course and scope of his employment was injured, and incurred damages therefrom. He brought an action against Tab Construction alleging that negligent conduct on the part of certain employees of Tab Construction while acting in the course and scope of their employment caused the injury to him. Giacona also named as codefendants certain individual employees of the petitioner, Tab Construction.

At the date of the accident Tab Construction carried Nevada Industrial Insurance on behalf of all the employees of the subcontractor, Horizontal Boring and Tunnel, Inc., and they were eligible to receive any benefits therefrom. Tab filed a motion for summary judgment which was denied apparently on the ground that the law of Arizona applies. Arizona allows a common-law action against the general contractor in a workmen's compensation case. This, of course, is contrary to Nevada's statutory workmen's compensation scheme which prohibits common-law relief in this situation.

*Id.* 432 P.2d at 91. The court noted that the Nevada Industrial Insurance Act provided that subcontractors and their employees are to be deemed employees of the prime contractor, that an employer who accepts the terms of the Act is relieved from further liability, and that the rights and remedies under the Act are exclusive and conclusive on both the employer and the employee. Based on these provisions, the court held that the Act "is exclusive in the sense that no other common-law or statutory remedy under local law may be sought by the employee against his employer." *Id.* The court next observed "that the State of Nevada has a legitimate constitutional interest in the application of its own domestic law and policy to a work injury occurring within its borders." *Id.*, citing *Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), and *Pacific Employers Insurance Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939). Thereupon, the court declared:

The interest of Nevada in the instant case does not derive solely from the occurrence of the injury within its borders. Significant is the fact that it is the state of the forum. If the forum state is concerned, it will not favor the application of a rule repugnant to its own policies, and the law of the forum will presumptively apply, unless it becomes clear that non-forum incidents are of greater significance. *Alaska Packers Ass'n v. Industrial Acc. Comm.,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); *Wilcox v. Wilcox,* 26 Wis.2d 517, 133 N.W.2d 408 (1965).

There are no compelling reasons to displace the domestic law and policies of Nevada. Nevada is the forum state, the place of residence of the general contractor, the place of the work injury, the place where employment exists and is carried out, the place where the general contractor's business is localized, and the place the employees work. All of Nevada's relevant policies of workmen's compensation are vitally involved. We therefore must pay heed and give effect to this interest.

Under the confines of these facts we grant the petition for a writ of prohibition.

*Id.* 432 P.2d at 91–92.

Southern Pacific contends that *Tab Construction* did not involve a choice of law determination; instead, it is urged that the decision concerned whether the Nevada statute could constitutionally be applied to an action arising from an injury in Nevada to an employee whose employment relationship centered in Arizona. This reading of the case is supported by the court's citation to three Supreme Court decisions concern-

ing the constitutional limitations on the application of state law in workmen's compensation cases which implicated the law of more than one state. In *Carroll v. Lanza, supra,* the most recent of the three decisions cited in *Tab Construction,* for example, the plaintiff, Carroll, was an employee of Hogan, a subcontractor to the defendant-prime contractor, Lanza. Carroll and Hogan were residents of Missouri and Carroll's employment contract had been made in Missouri. The work was done in Arkansas, and Carroll's injury occurred there. After receiving weekly payments under the Missouri workmen's compensation statute, Carroll sued Lanza for damages in a common-law action in Arkansas. Judgment was rendered for Carroll in the district court, but the Fifth Circuit concluded that the Full Faith and Credit Clause barred the recovery. The Supreme Court reversed. The Court noted that its 1939 decision in *Pacific Employers Insurance Co. v. Industrial Accident Comm'n, supra,* proceeded on the premise that "the Full Faith and Credit Clause does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy." *Carroll v. Lanza, supra* 349 U.S. at 412, 75 S.Ct. at 807, 99 L.Ed. at 1188. The defendant sought to distinguish *Pacific Employers* on the ground that that decision had involved two competing workmen's compensation schemes whereas the *Carroll* case concerned a conflict between a workmen's compensation scheme and a common-law remedy. The Court, however, found no material difference:

Whatever deprives the remedy of the home State of its exclusive character qualifies or contravenes the policy of that State and denies it full faith and credit, if full faith and credit is due. But the Pacific Employers Ins. Co. Case teaches

that in these personal injury cases the State where the injury occurs need not be a vassal to the home State and allow only that remedy which the home State has marked as the exclusive one. The State of the forum also has interests to serve and to protect. . . . The State where the tort occurs certainly has a concern in the problems following in the wake of the injury. The problems of medical care and of possible dependents are among these . . . . A State that legislates concerning them is exercising traditional powers of sovereignty

. . . .

Missouri can make her Compensation Act exclusive, if she chooses, and enforce it as she pleases within her borders. Once that policy is extended into other States, different considerations come into play. Arkansas can adopt Missouri's policy if she likes. Or, as the Pacific Employers Ins. Co. Case teaches, she may supplement it or displace it with another, insofar as remedies for acts occurring within her boundaries are concerned. Were it otherwise, the State where the injury occurred would be powerless to provide any remedies or safeguards to nonresident employees working within its borders. We do not think the Full Faith and Credit Clause demands that subserviency from the State of the injury.

*Id.* 349 U.S. at 412–14, 75 S.Ct. at 807–08, 99 L.Ed. at 1188–89.[8]

Obviously, the *Tab Construction* court was concerned with the constitutional implications of application of Nevada's workmen's compensation scheme and the rejection of Arizona's scheme when the injured employee was a resident of Arizona and was employed by an Arizona subcontractor. Southern Pacific contends that the decision

**8.** The Supreme Court's 1935 decision in *Alaska Packers Ass'n v. Industrial Accident Comm'n,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), is the first of the trilogy of workmen's compensation cases considering the implications of the Full Faith and Credit Clause cited by *Tab Construction.* The Court noted that a strict application of that Clause would have the result that

the statute of one state must be enforced in the courts of the other state but not in its own courts. The way to avoid that "absurd result," the Court held, is "by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight." *Id.* 294 U.S. at 457, 55 S.Ct. at 524, 79 L.Ed. at 1052.

was limited to the constitutional question and did not address a choice of law determination. The United States admits, as it must, that *Tab Construction* dealt with the constitutional analysis of the Full Faith and Credit Clause. The United States urges, however, that the Nevada Supreme Court did not limit itself to that matter. Instead, it is urged that the court examined the factors pertinent to a choice of law determination under the Restatement (Second) of Conflicts and, *sub silentio*, adopted the Restatement or "most significant contracts" approach as Nevada's conflicts rule.

As one basis for its position, the United States directs the court's attention to the Ninth Circuit's reading of *Tab Construction* in *Romero v. Ten Eyck-Shaw, Inc.*, 400 F.2d 81 (9th Cir. 1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 629, 21 L.Ed.2d 566 (1969). In *Romero*, the Ninth Circuit was faced with an appeal from the district court's granting of summary judgment against the plaintiffs. The facts in *Romero* were very similar to those in *Tab Construction*:

> Here, as in *Tab Construction Co.*, the plaintiff employee was a citizen of Arizona and the subcontractor that employed him was an Arizona corporation. Here, as there, the general contractor was doing work in Nevada and complied with Nevada's workmen's compensation plan. Here, as there, Nevada is the forum state, the contract contemplated work there, the work was done there, and the injury occurred there. The principal difference is that Ten Eyck is a Texas corporation, and does not have its principal place of business in Nevada. Thus, it is not a "resident" of Nevada. In both cases, the general contractor's only connection with Arizona is that it hired an Arizona subcontractor.

*Id.* at 82–83. The Ninth Circuit disagreed with the *Tab Construction* conclusion that the plaintiff would have had a cause of action for common-law damages under Arizona law, but concluded that there was no need to decide the effect of Arizona law because the district court had correctly concluded that Nevada law barred the common-law action. The court stated:

The proper function of federal courts in diversity cases with respect to choice of law problems "is to ascertain what the state law is, not what it ought to be." *Klaxon Co. v. Stentor Co.*, [*supra*]. Here, that means the Nevada law, the law of the forum state. The recent decision of the Nevada Supreme Court in *Tab Construction Co., supra*, on facts remarkably similar to this case, held that there was no compelling reason not to apply Nevada law. . . . We find nothing in the Nevada decisions that convinces us that [the minor differences between this case and *Tab Construction*] would induce Nevada to apply Arizona law here. On the contrary, we think that here, as in *Tab Construction Co.*, "all of Nevada's relevant policies of Workmen's compensation are vitally involved" (83 Nev. at 367, 432 P.2d at 92).

*Id.* at 82–83. It is clear beyond dispute that the Ninth Circuit interpreted *Tab Construction* as including a choice of law analysis. The distinction between that and the constitutional analysis is reinforced by the court's concluding paragraph:

> Nor does the full faith and credit clause require that Nevada apply Arizona law here. Generally, in workmen's compensation cases, either the state where the injury occurred, *Pacific Employers Ins. Co. v. Industrial Accident Commission*, [*supra*]; or the state where the employment contract was made, *Carroll v. Lanza*, [*supra*]; *Alaska Packers Assoc. v. Industrial Commission*, [*supra*], may apply its own law. Nevada is the state where the injury occurred. We think that it may, and that it would, apply its own law here.

*Id.* at 83.

In addition to relying on *Romero*, the United States notes that the Nevada Supreme Court cited *Wilcox v. Wilcox*, 26 Wis.2d 617, 133 N.W.2d 408 (1965). In *Wilcox*, the Wisconsin Supreme Court rejected the *lex loci* rule in a multistate tort action in favor of a modification of the Restatement (Second) of Conflicts approach as

found in Tentative Draft No. 9. *Tab Construction* cited *Wilcox* in the following passage, after having declared that Nevada had a legitimate constitutional interest in the application of its workmen's compensation law to an injury in Nevada:

The interest of Nevada in the instant case does not derive solely from the occurrence of the injury within its borders. Significant is the fact that it is the state of the forum. If the forum state is concerned, it will not favor the application of a rule repugnant to its own policies, and the law of the forum will presumptively apply, unless it becomes clear that non-forum incidents are of greater significance. *Alaska Packers Ass'n v. Industrial Acc. Comm.,* [*supra*]; *Wilcox v. Wilcox,* [*supra*].

*Tab Construction Co. v. Eighth Judicial District Court, supra* 432 P.2d at 91–92. The *Alaska Packers* decision by the Supreme Court is, as noted earlier, one of the line of workmen's compensation cases in which the Court was concerned with the constitutional implications under the Full Faith and Credit Clause of the application of one state's law over another. The *Alaska Packers'* Court declared, in part:

The interest of Alaska is not shown to be superior to that of California. No persuasive reason is shown for denying to California the right to enforce its own laws in its own courts, and in the circumstances the full faith and credit clause does not require that the statutes of Alaska be given that effect.

*Alaska Packers Ass'n v. Industrial Accident Comm'n, supra,* 294 U.S. at 550, 55 S.Ct. at 525, 79 L.Ed. at 1053. After citing to *Alaska Packers,* the Nevada Supreme Court cited the *Wilcox* decision. Examination of that decision reveals the following passage:

The proposed Draft of the Restatement Second, supra, lists contacts that in *some* cases may be controlling. We conclude that the mere counting of contacts should not be determinative of the law to be applied. It is rather the relevancy of the contact in the terms of policy considerations important to the forum, vis-a-vis, other contact states. We start with the premise that if the forum state is concerned it will not favor the application of a rule repugnant to its own policies, and that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance.

*Wilcox v. Wilcox, supra,* 133 N.W.2d at 416. Comparison of the language of the Nevada Supreme Court with that of the *Wilcox* decision shows that the concluding sentence quoted above is virtually identical to the *Tab Construction* language preceding the court's citation to *Wilcox.* One is left to wonder whether *Wilcox* was cited merely as the source for the language that the Nevada Supreme Court chose to use or whether the court intended to express approval or even adoption of the choice of law rule promulgated in *Wilcox.* The United States urges, of course, the latter interpretation.

Southern Pacific responds to the United States' reading of the citation to *Wilcox* by admitting that the citation "does suggest that the Nevada Supreme Court may in the future consider adopting some choice of law rule other than lex loci." Southern Pacific's Brief, filed Oct. 30, 1978, at 9–10. Nonetheless, Southern Pacific contends that the citation is insufficient to demonstrate a decision to reject *lex loci* in *Tab Construction.* In particular, Southern Pacific notes that the *Wilcox* court discussed a number of variations in the modern choice of law rules before adopting its own variation of the Second Restatement approach.

In an effort to resolve the questions raised by *Tab Construction,* this court examined the briefs submitted to the Nevada Supreme Court in that case and in other cases. The *Tab Construction* briefs reveal that the parties, particularly the respondent, perceived the question to be primarily one of choice of law. The respondent's brief states:

Counsel for the Petitioner has assumed that the Nevada Industrial Act applies to the case herein because the injury occurred in the State of Nevada. Thus, Petitioner is relying upon the rule that

the existence and extent of any tort liability is governed by the law of the State wherein the tort was committed. This is presently the law of Nevada. *Mitrovich v. Pavlovich,* [*supra*]; *Campbell v. Baskin,* [*supra*]; *Karlsen v. Jack,* [*supra*].

It is the Plaintiff's contention that the "place of wrong" rule is no longer justified. In recent years, departures from the traditional view have occurred in States other than Nevada. A new rule known as the "substantial interest" or "center of gravity" approach has evolved. It is respectfully urged that the court adopt the reasoning of the cases cited hereinafter.

Respondent's Answering Brief, at 1, *Tab Construction Co. v. Eighth Judicial District Court, supra.* Thereafter, the respondent discussed at length the decisions by other state courts to reject the *lex loci* rule, including *Babcock v. Jackson, supra; Kilberg v. Northeast Airlines, Inc., supra;* and *Wilcox v. Wilcox, supra.* In addition, the respondent concluded the initial portion of the brief as follows:

It is strongly urged that this court adopt the center of gravity test in cases where, as here, the place of the injury bears little relation to the parties and contacts. Tort law, like all law, is the reflection of various policies. Certainly one policy for which it is designed is to list a standard of conduct of persons towards others upon which all can rely. In the area of multi-state torts, the forum should frankly recognize that the only logical choice of law is that of the state most significantly related to the issue. Application of Nevada law, merely because that is where the injury occurred, is unrealistic. It is only by the application of the center of gravity rule that the game of "forum shopping" is nullified and uniform results in the interest of justice and fairness to the parties are accomplished. The law of Arizona should be applied.

Respondent's Answering Brief, at 6, *Tab Construction Co. v. Eighth Judicial District Court, supra.* As an "alternate theory," the respondent urged that recovery under the Arizona workmen's compensation law was proper, citing to certain cases involving a constitutional analysis: among others, *Alaska Packers Ass'n v. Industrial Accident Comm'n, supra.* Finally, the respondent argued that the denial of the motion for summary judgment was appropriate based on the facts establishing that Arizona was the state most significantly related to the case.

The petitioner urged in opposition that the plaintiff had enjoyed the benefits of Nevada's workmen's compensation laws even though he could have rejected coverage under the Nevada Industrial Insurance Act. The petitioner stated:

Plaintiff, after having enjoyed all of the advantages of [the Act's] protection, now seeks to disavow the responsibilities of such acceptance. The sole basis for the disavowal is Plaintiff's argument that the law of Arizona should apply under the center of gravity doctrine. Courts, by nature, prefer to apply local law in all cases. It was for this reason that constitutional limitations were placed upon the power of the court to apply its own law. The full faith and credit clause of the United States Constitution limits the application of local law and requires the application of foreign law under certain circumstances. When a court is dealing with a transitory cause of action, it may, under certain circumstances, apply its own law and reject the foreign law where the cause of action originated. A court may constitutionally apply its own law if it has certain minimum contacts with the cause of action and with the parties involved. [citation omitted].

The so-called "center of gravity rule" is simply a restatement of the minimum contacts necessary to make the application of local law constitutional. The basic conflicts of law rule is that the law of the place of the tort governs. As counsel for Plaintiff points out, this is the law of Nevada, and it is the law of the majority of American jurisdictions which still prefer certainty to expediency and still prefer judicial interpretation to judicial legislation.

Petitioner's Reply Brief, at 2–3, *Tab Construction Co. v. Eighth Judicial District Court, supra.* The petitioner concluded that the state of Arizona had insufficient contacts with the cause of action or with the defendant to make the application of Arizona law constitutional under the Full Faith and Credit Clause.

The United States reads the foregoing briefs as demonstrating that the issue of choice of law was presented to the Nevada Supreme Court and that the court then cited to a Restatement (Second) of Conflicts case, namely *Wilcox v. Wilcox, supra,* and proceeded to engage in a most significant contacts analysis to determine the applicable law. Thus, the United States urges that *Tab Construction* is necessarily a choice of law ruling adopting the Restatement (Second) of Conflicts as the Nevada rule. There is no question that the issue of choice of law was presented to the court; the respondent made a strong plea for rejection of the *lex loci* rule. Notwithstanding that plea, the court did not even mention the *lex loci* rule or the Nevada cases adopting and applying the rule.

There are several possible interpretations of *Tab Construction.* First, the case might be read, as the United States urges, as a decision to reject *lex loci* and adopt the more modern conflicts approach from the Restatement (Second) of Conflicts or another of the modern conflicts rules. Second, the case may reflect the adoption of a modern choice of law rule applicable to workmen's compensation cases with no expression of an intent to alter the *lex loci* rule as it applies to multi-state torts in general. A third possibility is that the decision reflects the willingness of the court to consider other choice of law rules in the future, without itself expressing a determination whether Nevada's choice of law rule should be altered. Finally, the case might be read as an adherence to the *lex loci* rule—the injury did, in fact, occur in Nevada—with a constitutional analysis included to demonstrate that Nevada could apply its own law under the Full Faith and Credit Clause.

This court has carefully considered all the potentially relevant cases and materials submitted by the parties and has engaged in exhaustive research seeking any additional cases that might shed light on the nature of the present Nevada choice of law rule. Review of all such information leads to the conclusion that the Nevada Supreme Court has not, to date, rejected the *lex loci* rule in multi-state tort actions of the type presently before this court. The three concluding possibilities in the preceding paragraph are more consistent with the language and circumstances of the *Tab Construction* decision than is the first possibility. Courts that have rejected the *lex loci* rule have done so explicitly, discussing the advantages and disadvantages of that rule and of the other, more modern choice of law rules, and selecting from among the modern rules the one that is deemed most suitable. *Tab Construction* does not mention the Nevada precedent for the *lex loci* rule, either with approval or with disapproval; neither does the court discuss the choice of law rules urged by the respondent in the plea for rejection of *lex loci.* In the absence of any such direct discussion, the United States would have this court read *Tab Construction* as *sub silentio* making a determination that cases such as *Campbell v. Baskin* are to be overruled and that a new, but substantially undefined, choice of law rule is to prevail. Although *Tab Construction* may presage a future ruling by the Nevada Supreme Court on choice of law, that ruling has yet to be handed down. Accordingly, it is the conclusion of this court that Nevada's choice of law rule remains the *lex loci* rule as expressed in the line of cases deriving from *Mitrovich v. Pavlovich.*