# CARROLL et al. v. LANZA, DOING BUSINESS AS LAKE CHARLES ELECTRIC CO.

No. 375.   Argued March 31, 1955.—Decided June 6, 1955.

*Shields M. Goodwin* argued the cause and filed a brief for petitioners.

*Alston Jennings* argued the cause for respondent.   With him on the brief was *Edward L. Wright*.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Carroll, the petitioner, was an employee of Hogan, an intervenor, who in turn was a subcontractor doing work for the respondent Lanza, the general contractor. Carroll and Hogan were residents of Missouri; and Carroll's employment contract with Hogan was made in Missouri. The work, however, was done in Arkansas; and it was there that the injury occurred.

Carroll, not aware that he had remedies under the Arkansas law, received 34 weekly payments for the injury under the Missouri Compensation Act. The Missouri Act is applicable to injuries received inside or outside the State where the employment contract, as here, is made in the State. Mo. Rev. Stat., 1949, § 287.110. The Missouri Act also provides that every employer and employee shall be "conclusively presumed to have elected to accept" its provisions unless "prior to the accident" he shall have filed with the compensation commission a written notice that he "elects" to reject the compensation provision. *Id.,* § 287.060. No such notice, however, was filed in this case. Moreover, the Missouri Act provides that the rights and remedies granted by it "shall exclude all other rights and remedies . . . at common law or otherwise," on account of the injury or death.[1] *Id.,* § 287.120.

---

[1] The Missouri Supreme Court has construed the Missouri Compensation Act as providing the exclusive remedy, even when, as here, the employee of the subcontractor sues the general contractor for common-law damages. *Bunner* v. *Patti,* 343 Mo. 274, 283, 121 S. W. 2d 153, 156–157. The touchstone seems to be the existence of a Missouri employment contract, such as exists in the present case, wherever the injury may have occurred. We can find no suggestion in the Missouri cases that the Missouri Compensation Act is not the exclusive remedy against the prime contractor when his contract with the subcontractor is made outside Missouri. No such suggestion is made by any of the parties to this litigation.

. Arkansas also has provisions for workmen's compensation. Ark. Stat., 1947, § 81–1301 *et seq.* It provides the exclusive remedy of the employee against the employer (*id.*, § 81–1304) but not against a third party. *Id.*, § 81–1340. And the court below, on review of Arkansas authorities, concluded that a general contractor, such as Lanza, the respondent, was a third party within the meaning of the Arkansas Act. And see *Baldwin Co.* v. *Maner,* —— Ark. ——, 273 S. W. 2d 28.

While Carroll was receiving weekly payments under the Missouri Act, he decided to sue Lanza for common-law damages in the Arkansas courts. Lanza had the case removed to the Federal District Court where judgment was rendered for Carroll.[2] 116 F. Supp. 491. The Court of Appeals, while agreeing with the District Court that the judgment was sustainable as a matter of ·Arkansas law, reversed on the ground that the Full Faith and Credit Clause of the Constitution [3] (Art. IV, § 1) barred recovery. 216 F. 2d 808. The case is here by petition for certiorari which we granted (348 U. S. 870) because of doubts as to the correctness of the decision raised by *Pacific Employers Insurance Co.* v. *Commission,* 306 U. S. 493.

The Court of Appeals thought *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, to be controlling. There the employee having received a *final award* for compensation

---

[2] Hogan and his Indemnity Company, intervenors, were granted a lien on the judgment in favor of Carroll for the amounts paid to Carroll as compensation.

[3] Article IV, § 1 of the Constitution provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

in the forum of the injury returned to his home State and sued to recover under its Compensation Act. We held that the latter suit was precluded by the Full Faith and Credit Clause. But here there was no final award under the Missouri Act. Under that Act the statutory payments apparently start automatically on receipt of notice of the injury. Mo. Rev. Stat., 1949, §§ 287.380, 287.400. While provision is made for an adjudication of disputes between an employee and his employer (id., §§ 287.400, 287.450), no adjudication was sought or obtained here.

Nor do we have a case where an employee, knowing of two remedies which purport to be mutually exclusive, chooses one as against the other and therefore is precluded a second choice by the law of the forum. Rather we have the naked question whether the Full Faith and Credit Clause makes Missouri's statute a bar to Arkansas' common-law remedy.

A statute is a "public act" within the meaning of the Full Faith and Credit Clause. See *Bradford Electric Co. v. Clapper,* 286 U. S. 145, 154–155, and cases cited; *Alaska Packers Assn. v. Commission,* 294 U. S. 532. It was indeed held in the *Clapper* case that a Vermont Compensation Act, which purported to give an exclusive remedy, barred a common-law action on the same claim in the New Hampshire courts by a Vermont employee against a Vermont employer, even though the injury occurred in New Hampshire. The *Clapper* case allowed a State to fix one exclusive remedy for personal injuries involving its residents, and required the other States to refuse to enforce any inconsistent remedy. Thus, as respects persons residing or businesses located in a State, a remedy was provided employees that was "both expeditious and independent of proof of fault," and a liability was imposed on employers that was "limited and determinate." 286 U. S., at 159.

*Pacific Employers Insurance Co.* v. *Commission,* 306 U. S. 493, departed, however, from the *Clapper* decision. There a resident of Massachusetts regularly employed in Massachusetts by a Massachusetts corporation was injured while doing temporary duty in California. The Massachusetts Compensation Act purported to give an exclusive remedy, even for injuries incurred beyond its borders. But California also had a Compensation Act which undertook to fix liability on employers, irrespective of any contract, rule, or regulation, a provision which the California courts strictly enforced. The Court, therefore, held that the exclusive nature of the Massachusetts Act was "obnoxious" to the policy of California. The Court proceeded on the premise, repeated over and again in the cases, that the Full Faith and Credit Clause does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy. *Id.,* at 502.

The *Pacific Employers Insurance Co.* case allowed the Compensation Act of the place of the injury to override the Compensation Act of the home State. Here it is a common-law action that is asserted against the exclusiveness of the remedy of the home State; and that is seized on as marking a difference. That is not in our judgment a material difference. Whatever deprives the remedy of the home State of its exclusive character qualifies or contravenes the policy of that State and denies it full faith and credit, if full faith and credit is due. But the *Pacific Employers Insurance Co.* case teaches that in these personal injury cases the State where the injury occurs need not be a vassal to the home State and allow only that remedy which the home State has marked as the exclusive one. The State of the forum also has interests to serve and to protect. Here Arkansas has opened its courts to negligence suits against prime con-

tractors, refusing to make relief by way of workmen's compensation the exclusive remedy. *Baldwin Co.* v. *Maner, supra.* Her interests are large and considerable and are to be weighed not only in the light of the facts of this case but by the kind of situation presented. For we write not only for this case and this day alone, but for this type of case. The State where the tort occurs certainly has a concern in the problems following in the wake of the injury. The problems of medical care and of possible dependents are among these, as *Pacific Employers Insurance Co.* v. *Commission, supra,* emphasizes. *Id.,* at 501. A State that legislates concerning them is exercising traditional powers of sovereignty. Cf. *Watson* v. *Employers Liability Corp.,* 348 U. S. 66, 73. Arkansas therefore has a legitimate interest in opening her courts to suits of this nature, even though in this case Carroll's injury may have cast no burden on her or on her institutions.

This is not a case like *Hughes* v. *Fetter,* 341 U. S. 609, where the State of the forum seeks to exclude from its courts actions arising under a foreign statute. In that case, we held that Wisconsin could not refuse to entertain a wrongful death action under an Illinois statute for an injury occurring in Illinois, since we found no sufficient policy considerations to warrant such refusal. And see *Broderick* v. *Rosner,* 294 U. S. 629. The present case is a much weaker one for application of the Full Faith and Credit Clause. Arkansas, the State of the forum, is not adopting any policy of hostility to the public Acts of Missouri. It is choosing to apply its own rule of law to give affirmative relief for an action arising within its borders.

Missouri can make her Compensation Act exclusive, if she chooses, and enforce it as she pleases within her borders. Once that policy is extended into other States, different considerations come into play. Arkansas can adopt Missouri's policy if she likes. Or, as the *Pacific*

*Employers Insurance Co.* case teaches, she may supplement it or displace it with another, insofar as remedies for acts occurring within her boundaries are concerned. Were it otherwise, the State where the injury occurred would be powerless to provide any remedies or safeguards to nonresident employees working within its borders. We do not think the Full Faith and Credit Clause demands that subserviency from the State of the injury.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BURTON and MR. JUSTICE HARLAN join, dissenting.

In order to place the problems presented by this case in the proper context for adjudication, it has seemed to me desirable to examine the course of the Court's decisions touching the constitutional requirement for giving full faith and credit to statutes of a sister State.

The cases fall into three main groups: [1]
(1) Those in which the forum was called upon to give effect to a sister-state statute and declined to do so.

> *Hancock National Bank* v. *Farnum,* 176 U. S. 640; *Atchison, Topeka & Santa Fe R. Co.* v. *Sowers,* 213 U. S. 55; *Tennessee Coal, Iron & R. Co.* v. *George,* 233 U. S. 354; *Clark* v. *Williard,* 292 U. S. 112; *Broderick* v. *Rosner,* 294 U. S. 629; *Hughes* v. *Fetter,* 341 U. S. 609; *First National Bank of Chicago* v. *United Air Lines, Inc.,* 342 U. S. 396; *Wells* v. *Simonds Abrasive Co.,* 345 U. S. 514.

---

[1] Two other groups of cases do not here concern us: those holding that a full faith and credit contention must be properly raised in the lower courts, see *Chicago & Alton Railroad* v. *Wiggins Ferry Co.,* 119 U. S. 615, and those holding that a mere misconstruction by the forum of the laws of a sister State is not a violation of the Full Faith and Credit Clause, see, *e. g., Pennsylvania Fire Insurance Co.* v. *Gold Issue Mining & Milling Co.,* 243 U. S. 93.

From these cases it appears that the forum cannot, by statute or otherwise, refuse to enforce a sister-state statute giving a transitory cause of action, whether in contract or tort. *E. g., Broderick* v. *Rosner, supra; Hughes* v. *Fetter, supra.* Indeed, the forum may permissibly go a step in the other direction and disregard the venue provisions of an out-of-state statute which would have prevented the forum from enforcing the right. *Tennessee Coal, Iron & R. Co.* v. *George, supra.* The forum may, however, apply its own more restrictive statute of limitations to an outside wrongful death action, *Wells* v. *Simonds Abrasive Co., supra,* and dicta indicate that it may refuse to enforce a penal law, a law found antagonistic to the forum's public policy, or a law which requires specialized proceedings or remedies not available in the forum, see *Broderick* v. *Rosner,* 294 U. S., at 642–643; *Hughes* v. *Fetter,* 341 U. S., at 612.

(2) Those in which the forum applied its own statute rather than that of a sister State because the latter was not of limiting exclusiveness, or in which the forum applied the sister-state statute because the forum's was not exclusive.

> *Bond* v. *Hume,* 243 U. S. 15; *Ohio* v. *Chattanooga Boiler & Tank Co.,* 289 U. S. 439; *Industrial Commission* v. *McCartin,* 330 U. S. 622. See also *Bonaparte* v. *Tax Court,* 104 U. S. 592; *American Fire Insurance Co.* v. *King Lumber & Mfg. Co.,* 250 U. S. 2.

These cases prove that, where the statute of either the forum or the outside State is not found to be exclusive regarding remedies or rights elsewhere, the statute need not be accorded exclusive effect. Further, the Court has stated that, in the area of workmen's compensation, "unmistakable language" is required before exclusiveness will be attributed. See *Industrial Commission* v. *McCartin,* 330 U. S., at 628.

(3) Those in which the forum applied its own substantive law, statutory or judicial, when clearly in conflict with the out-of-state statute.

*National Mutual Building & Loan Association* v. *Brahan*, 193 U. S. 635; *Olmsted* v. *Olmsted*, 216 U. S. 386; *Converse* v. *Hamilton*, 224 U. S. 243; *New York Life Insurance Co.* v. *Head*, 234 U. S. 149; *Supreme Council of the Royal Arcanum* v. *Green*, 237 U. S. 531; *Hood* v. *McGehee*, 237 U. S. 611; *Marin* v. *Augedahl*, 247 U. S. 142; *Aetna Life Insurance Co.* v. *Dunken*, 266 U. S. 389; *Modern Woodmen of America* v. *Mixer*, 267 U. S. 544; *Bradford Electric Light Co.* v. *Clapper*, 286 U. S. 145; *Alaska Packers Association* v. *Industrial Accident Comm'n*, 294 U. S. 532; *Chandler* v. *Peketz*, 297 U. S. 609; *John Hancock Mutual Life Insurance Co.* v. *Yates*, 299 U. S. 178; *Sovereign Camp of the Woodmen of the World* v. *Bolin*, 305 U. S. 66; *Pacific Employers Insurance Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493; *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U. S. 487; *Griffin* v. *McCoach*, 313 U. S. 498; *Pink* v. *A. A. A. Highway Express, Inc.*, 314 U. S. 201; *State Farm Mutual Automobile Insurance Co.* v. *Duel*, 324 U. S. 154; *Cardillo* v. *Liberty Mut. Ins. Co.*, 330 U. S. 469; *Order of United Commercial Travelers* v. *Wolfe*, 331 U. S. 586.

These cases have arisen in three principal fields: (a) commercial law; (b) insurance; and (c) workmen's compensation. As a statistical matter, in 21 cases of direct conflict the Court held for the forum 10 times and for the sister State 11 times.

(a) In commercial law a number of cases have involved statutory assessment against out-of-state shareholders under the laws of the State of incorporation of an insolvent corporation. The Court's consistent position has

been that the law of the incorporating State must be given effect by the forum. *E. g., Converse* v. *Hamilton, supra.* That law is deemed to create a transitory cause of action based on the contractual relation between the corporation and the shareholder by which the shareholder is held to have consented to reasonable state regulation. The Court has relied on the fact that in each case a judicial proceeding in the incorporating State had previously passed upon the necessity and amount of the assessment, and that, although shareholders in the forum were not parties to such a proceeding, their interest was adequately represented by other shareholders. Personal defenses, such as the nonexistence of the shareholder relation, may still be asserted. Cf. *Pink* v. *A. A. A. Highway Express, Inc.,* 314 U. S., at 208.

When the commercial context is not that of shareholder-corporation but simple contract, the Court has found less need for uniformity and accordingly has given greater leeway to the forum on a showing of substantial interest in the contract, *e. g.,* that one of the parties is a resident of the forum or that the contract is to be performed within its borders. The Court has spoken of the presumed acceptance of the forum's laws by a corporation doing business in the forum. *National Mutual Building & Loan Association* v. *Brahan, supra.* In other cases the argument has been narrower, for instance that the forum can control an incidental item of damages such as interest. *Klaxon Co.* v. *Stentor Elec. Mfg. Co., supra.* Occasionally reliance has rested on ordinary conflict of laws doctrine. See *Olmsted* v. *Olmsted, supra* (holding that the forum can exclusively control disposition of land within its borders).

(b) The insurance cases reflect considerations similar to those in the commercial cases. The Court has found in fraternal benefit societies an "indivisible unity" among the members and a resultant need for uniform construc-

tion of rights and duties in the common fund. *E. g., Order of United Commercial Travelers* v. *Wolfe, supra.* Hence the law of the society's home State (and bylaws adopted under it) has prevailed. The Court has been able to draw support from decisions of the home State validating either the practice under question or one similar to it. (The cases have involved increase of dues, presumption of death from long absence, *ultra vires* certificates, and time limitation on bringing suit.) In an analogous situation, the forum has prevailed on the question whether an individual is in fact an assessable member of a mutual insurance company (rather than a mere policyholder), on the ground that the interpretation and legal effect of the contract is peculiarly within the competence and sphere of interest of the forum. *Pink* v. *A. A. A. Highway Express, Inc., supra.*

As to ordinary insurance contracts, the forum has had a much wider scope. The Court has balanced the interests of the competing jurisdictions, including factors such as the residence of the insured, where premiums were paid or payable, where the policy was applied for and delivered, where the insured died, what law the policy itself provided should govern, and whether loan agreements and new policies were ancillary to the initial policy. The forum has been permitted to protect its residents against insurance companies, but the Court has required the forum to have more than a casual interest. It has not been sufficient, for example, that the forum was the State of initial issue of the policy on which a defaulted loan was obtained, *New York Life Insurance Co.* v. *Head, supra,* or the place of issue of a converted policy and the residence at death of the insured, *Aetna Life Insurance Co.* v. *Dunken, supra,* or the place where suit has been brought, *John Hancock Mutual Life Insurance Co.* v. *Yates, supra.* On the other hand, the forum would succeed if it asserted a strong local policy requiring an insur-

able interest, see *Griffin* v. *McCoach, supra,* or a reserve requirement more stringent than that of the State of incorporation, *State Farm Mutual Automobile Insurance Co.* v. *Duel, supra.*

(c) In workmen's compensation cases the Court has likewise adopted an interests-weighing approach. The relevant considerations have been: the place of the employment contract; the residence of the parties; the place of injury; the possibility of the workman becoming a public charge in the State seeking to award compensation, see *Alaska Packers Association* v. *Industrial Accident Comm'n, supra;* the interest of a State in securing prompt payment of medical fees to its residents, see *Pacific Employers Insurance Co.* v. *Industrial Accident Comm'n, supra;* the aspect of exclusiveness of the foreign statute, see *Industrial Commission* v. *McCartin, supra;* the State's interest in the bodily safety and economic protection of workers within it; the difference between a defense (which if rejected results in irremediable liability) and a cause of action (which if not allowed in one State can be pursued in another), see *Bradford Electric Light Co.* v. *Clapper, supra;* the amount of work to be performed in a State, see *Cardillo* v. *Liberty Mut. Ins. Co., supra;* and the policy of determinate liability and prompt remedy underlying workmen's compensation acts. The Court first enunciated the rule that the forum must permit a defense based on the exclusiveness of the sister-state statute where the only contact of the forum was that it was the place of injury. *Bradford Electric Light Co.* v. *Clapper, supra.* Conversely, the Court held that the place of contract could award compensation though the injury occurred elsewhere. *Alaska Packers Association* v. *Industrial Accident Comm'n, supra.* Subsequently, the Court held that the forum could prevail, even though the parties resided and the contract was entered in another State whose statute was exclusive, if

the injury occurred in the forum and enforcement of the defense of the outside statute was deemed "obnoxious" to the forum's policy. *Pacific Employers Insurance Co.* v. *Industrial Accident Comm'n, supra.*

In applying to the immediate situation the fair guidance offered by the past decisions of the Court regarding full faith and credit, a number of considerations become apparent: [2] (1) Unlike the other workmen's compensation cases—or, for that matter, any of the cases in which the forum has prevailed in a conflict between the forum and the outside law—the interest of the forum here is solely dependent on the occurrence of the injury within its borders. No rights of Arkansas residents are involved, since none of the parties is an Arkansan; the workman was removed immediately to a Missouri hospital and has, so far as appears, remained in Missouri. What

---

[2] Stated shortly, the facts of this case are: Carroll, a Missourian, entered into a Missouri employment contract with Hogan, who operated a Missouri painting company. Hogan in turn contracted with Lanza, a Louisiana electrical contractor, to do painting on a federal project in Arkansas for which Lanza had a government contract. While on the job in Arkansas, Carroll was injured. Hogan's insurer voluntarily began to pay workmen's compensation to Carroll pursuant to Missouri law, though no formal proceedings or award were had. Thereafter, Carroll brought suit against Lanza in an Arkansas state court, alleging that his injury was caused by the negligence of Lanza's employees. Since there was diversity of citizenship, Lanza removed the case to federal court. He then moved for summary judgment, claiming that the Missouri workmen's compensation law, to which Carroll was subject, afforded an exclusive remedy. The court rejected this contention and rendered an $18,000 judgment for Carroll. 116 F. Supp. 491. The Court of Appeals for the Eighth Circuit, relying on *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, reversed on the ground that full faith and credit required Arkansas to give effect to what the court treated as a final and exclusive award in the payments received under the Missouri statute. 216 F. 2d 808.

This dissent agrees with the Court that the Court of Appeals misapplied *Magnolia* to the facts of this case.

might be regarded as the societal interest of Arkansas in the protection of the bodily safety of workers within its borders is an interest equally true of any jurisdiction where a workman is injured and exactly the sort of interest which New Hampshire had in *Clapper*. (2) Thus, the Court is squarely faced with the *Clapper* problem.[3] To make the interest of Arkansas prevail over the interest of Missouri on the basis of the Full Faith and Credit Clause would require that *Clapper* be explicitly overruled and that, in the area of workmen's compensation law, the place of injury be decisive. And if *Clapper* is to be overruled, on which I and those who join me express no opinion, it should be done with reasons making manifest why Mr. Justice Brandeis' long-matured, weighty opinion in that

---

[3] Concededly the *Pacific Employers* case narrowed what was said in *Clapper*. The Court there found the conjunction of four factors decisive in upholding the California Supreme Court's determination that the Massachusetts statute was "obnoxious" to the public policy of California: (1) medical services were rendered in California and directly reimbursable from the California award; if California could not make an award, its residents would be remitted to Massachusetts and Massachusetts remedies to recover for their services; (2) bodily safety and economic protection of workers within its boundaries is a relevant interest of the forum; (3) the California statute provided: "No contract, rule, or regulation shall exempt the employer from liability . . . ."; (4) Congress had not yet passed legislation prescribing the full faith and credit effect to be given to statutes.

The distinctions between that case and the one now at bar are to be noted. Of course we are not deciding this case as an isolated instance. But we are passing on the elements of this situation and not of some other situation. The decision here will govern other cases of the same type. The circumstances of this case define the content of the type. That is the essence of the theory of balancing the societal interests of the forum State against those of a sister State. It is that which lies behind the statement that "the full faith and credit clause is not an inexorable and unqualified command," *Pink* v. *A. A. A. Highway Express, Inc.*, 314 U. S. 201, 210. But this does not mean that it is no command—that each State is at large to apply its own laws in disregard of greater interests of a sister State.

case was ill-founded. It should not be cast aside on the presupposition that full faith and credit need not be given to a sister-state workmen's compensation statute if the law of the forum happens to be more favorable to the claimant. (3) Furthermore, the new provision of 28 U. S. C. § 1738 cannot be disregarded. In 1948 Congress for the first time dealt with the full faith and credit effect to be given statutes.[4] The absence of such a provision was used by Mr. Justice Stone to buttress the Court's opinions both in *Alaska Packers,* 294 U. S., at 547, and *Pacific Employers,* 306 U. S., at 502. Hence, if § 1738 has any effect, it would seem to tend toward respecting Missouri's legislation. See Reese, Full Faith and Credit to Statutes: The Defense of Public Policy, 19 U. of Chi. L. Rev. 339, 343 *et seq.*

There is, however, a readily available alternative short of overruling *Clapper* which dispenses with the difficulties inherent in applying the Full Faith and Credit Clause. This alternative proceeds along the following lines:

Missouri's workmen's compensation statute is in terms applicable and exclusive as to workmen injured outside the State under Missouri employment contracts.[5]   Hogan

---

[4] The first two paragraphs of the section deal with the problem of authentication. The third paragraph provides: *"Such Acts,* records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." (Italics supplied.)

Prior to 1948 the quoted sentence did not include "Such Acts." Instead, it began: *"And the said* records and judicial proceedings," etc. (Italics supplied.)

[5] "Every employer and every employee, except as in this chapter otherwise provided, shall be conclusively presumed to have elected to accept the provisions of this chapter . . . unless prior to the accident he shall have filed with the commission a written notice that he elects to reject this chapter." Mo. Laws 1953, p. 535, § 1.

"This chapter shall apply to . . . all injuries received outside of this state under contract of employment made in this state, unless

(the subcontractor here) was a Missouri employer and had a Missouri employment contract with Carroll (the injured workman). Thus when Carroll sought workmen's compensation in Arkansas (where he was hurt), Hogan and his insurer could have relied on the Missouri statute and the *Clapper* case as a defense. They did not, presumably since Arkansas workmen's compensation cost them no more than Missouri's and they had an opportunity to recoup from the prime contractor as a third party under Arkansas law.[6]

But Lanza (the prime contractor) was not a Missouri employer, nor does the record disclose that he had a Missouri employment contract either with Hogan or Carroll. The basic contract between Lanza and Hogan was on a Louisiana letterhead and is a contract for work apparently to be performed exclusively in Arkansas. Hogan promised to furnish workmen and "It is further understood that . . . Hogan . . . will carry the necessary insurance on his men in according [*sic*] with the rules of the state of Arkansas." The supplemental contract for the par-

---

the contract of employment in any case shall otherwise provide." Mo. Rev. Stat., 1949, § 287.110.

"The rights and remedies herein granted to an employee, shall exclude all other rights and remedies of such employee . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter." Mo. Rev. Stat., 1949, § 287.120.

[6] Hogan was covered by his insurer both in Missouri and Arkansas. The insurer initially paid Carroll $30 a week, the maximum under the Missouri workmen's compensation law. When Carroll sought to transfer to Arkansas compensation, the insurer began to pay him $25 a week, the maximum under the Arkansas statute. Arkansas law allows an injured workman to sue a prime contractor for negligence, see *Baldwin Co.* v. *Maner*, —— Ark. ——, 273 S. W. 2d 28; *Anderson* v. *Sanderson & Porter*, 146 F. 2d 58 (C. A. 8th Cir.), and his immediate employer and the insurer of his immediate employer have a statutory lien on two-thirds of any recovery, Ark. Stat. Ann., § 81-1340.

ticular work on which Carroll was injured consisted of a letter bid by Hogan to Lanza and a letter reply authorizing Hogan to proceed. From the point of view of choice of law, the various aspects of the contract combine to make it governed either by Arkansas or Louisiana—but not Missouri—law. Cf. *Johnson* v. *Great Lakes Pipe Line Co.*, 358 Mo. 445, 215 S. W. 2d 460.

The Missouri workmen's compensation statute provides that "Where a third person is liable to the employee . . . for the injury or death, the employer shall be subrogated . . . and- the recovery by such employer shall not be limited to the amount payable as compensation to such employee . . . ." Mo. Rev. Stat., 1949, § 287.150. The Missouri Supreme Court has read this provision as allowing a common-law action by a worker against a negligent third party, *e. g., Schumacher* v. *Leslie*, 360 Mo. 1238, 232 S. W. 2d 913, on the theory that the worker may secure common-law recovery against anyone " 'upon whom no liability could be entailed under the Act,' " 360 Mo., at 1246, 232 S. W. 2d, at 918.

But the Missouri Supreme Court has held that a prime contractor is not liable as a third party for his negligence to an employee of a subcontractor. *Bunner* v. *Patti*, 343 Mo. 274, 121 S. W. 2d 153; see also *New Amsterdam Casualty Co.* v. *Boaz-Kiel Construction Co.*, 115 F. 2d 950 (C. A. 8th Cir.). And this because prime contractors are subject to liability under the workmen's compensation statute, which states: "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer . . . . [T]he immediate contractor . . . shall be liable as an employer of the employees of his subcontractors. . . . No such employer shall be liable . . . if

the employee was insured by his immediate or any intermediate employer." Mo. Rev. Stat., 1949, § 287.040.

The rationale of the Missouri decisions prohibiting a negligence action against a prime contractor is this: a person clearly subject to statutory liability cannot be sued as a third party. Cf. *Schumacher* v. *Leslie*, 360 Mo. 1238, 1247, 232 S. W. 2d 913, 918. But the Missouri rule has only been applied in cases where three preconditions were present: (a) all parties were subject to the Missouri workmen's compensation act; (b) the prime and subcontractor were doing business in Missouri; and (c) the injury took place on a project in Missouri.

Under the circumstances of the case before us, there is no basis for finding that Missouri would deem Lanza to be a Missouri employer and as such subject to liability for Missouri workmen's compensation. His contract had no Missouri ties other than the bare fact that the subcontractor was a Missouri resident.[7] And there is no indication that Lanza has ever done business in Missouri. Furthermore, Missouri requires that a defendant in a negligence suit who relies on the exclusiveness of the workmen's compensation statute must plead and prove as an affirmative defense that the parties are subject to it, *Kemper* v. *Gluck*, 327 Mo. 733, 39 S. W. 2d 330, a burden which Lanza certainly has not met. See *State ex rel. St. Louis Car Co.* v. *Hostetter*, 345 Mo. 102, 131 S. W. 2d 558. Thus there is no warrant for believing that the Missouri courts would refuse to allow suit against him as an ordinary third party. Presumably, then, Carroll could sue Lanza under either Missouri or Arkansas law for his negli-

---

[7] Nor is there any hint that Lanza was attempting to evade statutory responsibility to Carroll by setting up a financially irresponsible subcontractor, an evasion which has been called the "prime purpose" of the statutory provision as to prime contractors. *Wors* v. *Tarlton*, 234 Mo. App. 1173, 1186, 95 S. W. 2d 1199, 1205–1206, writ of certiorari quashed, 343 Mo. 945, 124 S. W. 2d 1072.

gence. Accordingly, the constitutional question presented should not be passed on.

But we ought not to rest on the initial determination of Missouri law here. In a number of the full faith and credit cases this Court has remanded for further consideration of state law. *E. g., Klaxon Co.* v. *Stentor Elec. Mfg. Co., supra; Griffin* v. *McCoach, supra; Clark* v. *Williard, supra.* Hence, I would remand this case to the Court of Appeals with instructions to determine whether our reading of Missouri law is wrong.