845 F.2d 465
 Jesus GARCIA, Plaintiff-Appellant,
v.
PITTSYLVANIA COUNTY SERVICE AUTHORITY; William C. Overman
Associates, Defendants-Appellees.
Elfido MORALES, Plaintiff-Appellant,
v.
PITTSYLVANIA COUNTY SERVICE AUTHORITY; William C. Overman
Associates, Defendants-Appellees.
 Nos. 87-2091, 87-2092.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 4, 1988.
Decided April 26, 1988.
 
 Charles R. Holton (William E. Freeman, Jo Ann Ragazzo Woods, Moore & Van Allen, Durham, N.C., on brief), for plaintiff-appellant.
 Philip Browder Morris (Michelle P. Wiltshire, Browder, Russell, Morris & Butcher, Richmond, Va., on brief), John L. Walker, Jr. (Steven D. Hedges, Woods, Rogers & Hazelgrove, Roanoke, Va., H. Victor Millner, Jr., Vansant, Millner & Vines, Chatham, Va., on brief), for defendants-appellees.
 Before WIDENER and HALL, Circuit Judges, and BULLOCK, District Judge, Middle District of North Carolina, sitting by designation.
 WIDENER, Circuit Judge:
 
 
 1
 Jesus Garcia and Elfido Morales, plaintiffs, appeal the denial of their claims for damages against Pittsylvania County Service Authority and William C. Overman Associates. For the reasons stated below, we affirm.
 
 
 2
 Plaintiffs were seriously injured on July 11, 1985 in an explosion while engaged in the construction of a sewer interceptor line. The line was owned by and under construction at the direction of the Authority, which, with financing from the Environmental Protection Agency and Farmers Home Administration, was constructing a portion of a major sanitary sewer system in the county, this section being known as the Sandy River Interceptor. Overman Associates, P.C., was engaged by the Authority by contract to perform engineering services for the entire project.
 
 
 3
 The Authority awarded the contract for the Sandy River section of the project designated 83-5-S to Roanoke Construction Company. Garcia and Morales were employees of Roanoke. The work performed included digging trenches, laying pipe and blasting rock. The plaintiffs were injured when a jackhammer being operated by Morales came into contact with an unexploded dynamite charge left from earlier blasting.
 
 
 4
 Roanoke is a North Carolina corporation with its principal place of business in that State. Plaintiffs are North Carolina residents and were employed by Roanoke in that State, they say pursuant to oral contracts of employment. They have received workers' compensation benefits pursuant to the North Carolina Workers' Compensation Act, N.C.Gen.Stat. Sec. 97-1, et seq, on account of Roanoke's workers' compensation coverage. They subsequently filed these actions in the United States District Court for the Western District of Virginia against the Authority and Overman, on June 18, 1986, seeking damages on account of their injuries. Defendants moved to dismiss the complaints on the grounds, inter alia, that plaintiffs' actions were barred by the exclusive remedy provision of the Virginia Workers' Compensation Act, Va. Code Sec. 65.1, et seq. The district court dismissed the complaints for the reason that the claims were so barred, and these appeals followed.
 
 
 5
 Prior to Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), it had been held, in Liberty Mutual Ins. Co. v. Goode Const. Co., 97 F.Supp. 316 (E.D.Va.1951), that Solomon v. Call, 159 Va. 625, 166 S.E. 467 (1932), held that Virginia looked to the State of the injured workman's residence, when the accident occurred within Virginia, and the contract of employment was in the State of residence of the workman. In both of these cases, the Virginia workers' compensation law was held not to apply to employees, injured in Virginia, who were residents of other States, working for out of state employers, in Virginia, thus allowing the injured employee to pursue his action for negligence against his employer in Liberty Mutual and against a stranger in Solomon.
 
 
 6
 The Supreme Court, however, in Carroll, held that, in workers' compensation cases involving differing state compensation statutes, the State where the injury occurred was not required to give full faith and credit to the workers' compensation act of the State of employment. The Court relied on Pacific Employers Ins. Co. v. Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939), which had held that the law of the forum State might prevail if the injury occurred in the forum, and stated that one State might not preclude another "from prescribing for itself the legal consequences of acts within it." 306 U.S. at 505, 59 S.Ct. at 634.
 
 
 7
 Under Virginia law, after Carroll, this court affirmed a summary judgment granted by the district court, on essential facts indistinguishable from those present here, in favor of a Virginia defendant in Home Indemnity Company of New York v. Poladian, 270 F.2d 156 (4th Cir.1959). The employee in Home Indemnity was a resident of the District of Columbia working for a D.C. employer (a subcontractor) on a construction project in Virginia. After being injured on the job, the employee elected to recover compensation in the District of Columbia, and Home Indemnity as subrogee brought suit on the employee's claim against the general contractor. This court stated that "in determining whether an actionable tort has been committed in Virginia we look to its laws, for it is within Virginia's competence to take away the common law right of action if it deems more just to award fixed compensation irrespective of negligence." 270 F.2d at 158. We held that the general contractor, as a statutory employer who had complied with the Virginia Act, was protected from the action in negligence by the Act even though no such bar existed under District of Columbia law.
 
 
 8
 In the case of McCann v. Newport News Shipbuilding and Dry Dock Company, 177 F.Supp. 909 (E.D.Va.1959), the district court followed Carroll and Home Indemnity and held that the law of the State of the accident controls the remedy sought in that particular forum. 177 F.Supp. at 913. The court declined to follow Liberty Mutual 's construction of Solomon. Thus, a New Jersey resident who was an employee of a New Jersey company, injured on the job at the defendant's shipyard in Virginia, who had collected compensation in New Jersey, was not allowed to bring suit in Virginia against the shipyard owner because the plaintiff had a right to workers' compensation against the shipyard owner, a statutory employer. The court further found that the defendant had complied with the workers' compensation act, and was the statutory employer of the injured employee who was engaged in the "trade, business or occupation" of the shipyard at the time the injury occurred. 177 F.Supp. at 914.
 
 
 9
 It is apparent to us, in the development of the law on the question at hand from Solomon to the present, that McCann states the present law of Virginia on the subject, and even if Liberty Mutual was a correct construction of Solomon at the time it was decided, it no longer has validity in view of Carroll and Home Indemnity. We are thus of opinion that the law of Virginia controls for this accident which occurred in Virginia and was occasioned by the negligence of an independent contractor with the Authority who was doing work in Virginia and required by Virginia law to have workers' compensation insurance.
 
 
 10
 Most of the rest of the questions in the case are answered by Anderson v. Thorington Construction Co., 201 Va. 266, 110 S.E.2d 396 (1959). In that case, the Richmond-Petersburg Turkpike Authority was arranging for the construction of a portion of the Richmond-Petersburg Turnpike. The Authority was a political subdivision of the Commonwealth created to construct the turnpike. It engaged Thorington Construction Company and another as joint adventurers to perform a section of the work. The Turnpike Authority also engaged an engineering firm to provide the services of consulting engineers for the project. It was the engineers' duty to see that the construction was performed in accordance with approved specifications. Anderson, the plaintiff, at the time of his injury, was performing his duties for the consulting engineers. He sued Thorington on account of injuries he suffered while injured on the job allegedly caused by the negligence of Thorington's employees. The trial court dismissed the case as a matter within the exclusive jurisdiction of the Industrial Commission of Virginia under the workers' compensation statutes, and its judgment was affirmed. The Virginia Supreme Court reasoned that both Thorington and the engineers were independent contractors with and under the Turnpike Authority. It held that both Thorington and the engineers were engaged in the construction of the turnpike which was a part of the trade, business or occupation of the Authority, and that since both were engaged in the trade, business or occupation of the Authority, neither was a stranger to the employment so as to be susceptible to suit. Both, the court held, were under "the canopy of the Workmens' Compensation Act." It held that the Turnpike Authority as the owner was liable to Anderson for workmen's compensation benefits and that Anderson was a statutory employee of the Turnpike Authority. It also held that the employees of Thorington were statutory employees of the Turnpike Authority. As such, the employees of the engineers and the employees of Thorington were statutory fellow servants. The court held Anderson could not maintain his action on account of the negligence of Thorington which caused the injury because that would amount to a suit against a statutory fellow servant and barred by the workmens' compensation act.
 
 
 11
 The plaintiff argues that the Service Authority in this case is not the statutory employer of the plaintiffs. We reject that argument, however, as did the Virginia court in Anderson. The Authority here is organized to acquire construct, operate and maintain water and sewer systems. See Va.Code Secs. 15.1-1239, et seq; 15.1-1250. The Authority in Anderson was authorized "to construct, maintain, repair and operate the turnpike project." 110 S.E.2d at 397. We see no difference of any significance in the purposes for which the two authorities were organized and empowered to act except that one authority concerned a turnpike and the other water and sewer systems. We also think that the holding in Anderson that those employed by a public authority to engage in the very work it was organized and authorized to do, are engaged in the trade, occupation and business of the owner, is binding on us here. Anderson, 110 S.E.2d at 400, 401. It follows that the holding of the Anderson court, that the two contractors engaged in the project and their employees were each statutory fellow servants, is also binding on us in this case. Accordingly, the argument made by the plaintiff that he may maintain his suit against Overman, a statutory fellow servant of Roanoke, is precluded by the decision in Anderson precluding Anderson from maintaining his suit against Thorington.
 
 
 12
 Finally, the plaintiff argues that in any event the Authority here, as a statutory employer, did not have workers' compensation insurance. The district court accepted as proof of insurance a certificate of insurance offered by Roanoke showing on its face that it had been delivered to the Authority, and so do we.[1]
 
 
 13
 The judgment of the district court is accordingly
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 We need not rely on the fact that the Authority had its own and a different workers' compensation policy which may well have covered the plaintiff