No. 127,123

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LINDA S. HENRETTY,
*Appellee*,

v.

HEALTHCENTER NORTHWEST, LLC,
*Appellee,*

and

KANSAS WORKERS COMPENSATION FUND,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Kansas Workers Compensation Act applies to injuries sustained outside the state where: (1) The principal place of employment is within the state; or (2) the contract of employment was made within the state, unless such contract otherwise specifically provides.

2.

It is a general principle of Kansas law that a contract is made when and where the last act necessary for its formation is done.

3.

There are two types of conditions precedent:  conditions precedent to the formation of a contract and conditions precedent to performance under an existing contract. Conditions precedent to the formation of a contract involve issues of offer and acceptance that precede the formation of a contract. Conditions precedent to performance under an existing contract define an event that must occur before a right or obligation

1

matures under the contract. Whether a condition is a condition precedent to formation of the contract or to performance under an existing contract is determined by the parties' intent.

4.

The Kansas Workers Compensation Act contains its own choice of law rules, rejecting the doctrine of *lex loci delicti—*the law of the place of injury. In deciding choice of law questions when dealing with workers compensation awards, a state's laws control when that state has a significant contact or significant aggregation of contacts that creates state interests. But this choice of its law must be neither arbitrary nor fundamentally unfair.

Appeal from Workers Compensation Board. Oral argument held September 17, 2024. Opinion filed October 18, 2024. Affirmed.

*John C. Nodgaard*, of Arn, Mullins, Unruh, Kuhn & Wilson, LLP, of Wichita, for appellant.

*David H. Farris*, of Slape & Howard, Chtd., of Wichita, for appellee.

Before WARNER, P.J., HILL and COBLE, JJ.

HILL, J.: In our highly mobile society, Kansas workers are often hired to work on jobs outside of this state. When they are injured on the job, they may receive workers compensation benefits as allowed by the laws of the state where they are working. But what happens to those benefits when those workers move back to Kansas? This case addresses one of the legal issues that arise from such a scenario.

Linda S. Henretty worked as a nurse in Wichita. She accepted work as a nurse in Montana where she was injured on the job. She received workers compensation benefits

2

for her injuries as well as an award for continuing benefits given the nature of her injury. Henretty has now returned to Kansas.

The legal question raised here is whether the Kansas Workers Compensation Fund is responsible for those continuing treatment expenses. The Workers Compensation Appeals Board ruled the Kansas Fund was liable, ruling Henretty's contract for employment was made in Kansas. The Fund appeals, arguing that it should not be liable.

*A nurse in Kansas is offered employment in Montana.*

Because of the nature of the issues raised in this appeal, we will delve into the circumstances of the execution of Nurse Henretty's contract.

In 2008, Linda Henretty was working as a scrub tech in the eye field at Wesley Medical Center in Wichita, Kansas. She had worked there for over nine years. She learned about a job opportunity with Healthcenter Northwest in Montana, where her son lived. Henretty spoke with Vicki Johnson, the Northwest administrator, by phone and then faxed her a resume. Northwest flew Henretty out to Montana for interviews. Within two to three days of her return to Wichita, Vicki called Henretty and offered her the position. Vicki said she would be sending something for Henretty to sign stating she had been hired. Vicki advised Henretty to start making plans to move to Montana—they wanted her there as soon as possible.

On July 25, 2008, Susan Stevens, the human resource director of Northwest, faxed Henretty a one-page signed written offer of employment. The letter began, "We are excited to have you join the team of great staff here at HCNW. This letter represents our offer of employment as a Senior OR Tech at HealthCenter Northwest." The letter listed the date of hire as "8/1/08 or shortly after." The letter included details including Henretty's position, wage, benefits, and schedule. Following those details, the letter

3

stated, "Please sign below, make a copy for yourself, and return this original to me at the address below. Upon receipt of your signed letter, your relocation check will be sent to you." Henretty signed the letter the same day, agreeing she "accept[ed] employment as detailed above." She provided her bank information for the transfer of relocation funds. Henretty faxed the signed document back to Northwest. In response, Northwest sent the relocation funds to Henretty. Henretty resigned her position at Wesley, sold her house, and relocated to Montana.

*A slip and fall causes ankle injuries and a workers compensation award.*

On August 11, 2008, Henretty began work at Northwest. That day, she completed and signed an application for employment, W-4 tax form, security agreement, and other documents. If she had refused to complete those documents, she would not have been employed.

On November 17, 2017, Henretty fractured her right ankle after slipping on ice in the parking lot at Northwest. She underwent surgery and was hospitalized for several days. Henretty received medical and temporary disability benefits under the Montana Workers Compensation Act. Her last medical treatment for the injury was September 27, 2019. She was also awarded compensation for future treatments for her ankle.

In 2020, Henretty moved back to Wichita and went back to work at Wesley. She wanted to get additional medical treatment for her injured ankle in Kansas. She still had hardware in her leg from the surgery in Montana.

In September 2021, the Montana State Fund offered Henretty a settlement of $8,000 for her future medical expenses. She declined the offer. Instead, Henretty filed an application for workers compensation benefits in Kansas. Since Northwest did not have

workers compensation insurance coverage in Kansas, the Kansas Workers Compensation Fund was impleaded under K.S.A. 44-532a.

*Henretty pursues a Kansas Workers Compensation Fund claim.*

After a preliminary hearing order, the Fund paid $288.51 in temporary total disability benefits to compensate for an underpayment based on the higher maximum weekly compensation rate allowed in Kansas compared to the weekly maximum in Montana. The case proceeded to a regular hearing. The Fund stipulated that Henretty met with a compensable injury in Montana. It also stipulated she had a 20% impairment which entitles her to disability benefits and future medical benefits upon proper application.

The parties disputed whether Kansas had jurisdiction over the workers compensation claim. Henretty argued Kansas had jurisdiction because there was a formal contract of employment on July 25, 2008, in Kansas. The Fund argued the last acts necessary for the formation of that contract were that Henretty had to move to Montana and complete certain forms in Montana.

The administrative law judge found Kansas had jurisdiction and awarded Henretty benefits under the Kansas Workers Compensation Act. The ALJ found the employment contract was formed in Kansas. The last act necessary for the formation of the employment contract was that Henretty sign and fax the letter to Northwest stating she was accepting the offer of employment, which she did in Kansas. Henretty's relocation to Montana was not a condition precedent to the formation of the employment contract. Henretty was paid for her moving expenses before she began work in Montana. The paperwork Henretty completed in Montana was like the standard paperwork most employees complete on their first day on the job; it was part of the job rather than a condition precedent to the formation of the contract.

The Workers Compensation Board affirmed the ALJ's decision. In the Board's view, Henretty would not have quit her job in Wichita and sold her house without a contract in place. Northwest would not have paid Henretty $5,000 without a contract in place.

The Fund appeals, claiming that Henretty's contract of employment was not completed in Kansas and therefore there is no jurisdiction for a Kansas award of workers compensation benefits. The Fund also raises a due process claim asking in its brief for a remand to the Board for a determination of the issue, but in oral argument, the Fund asked us to address the issue for the first time on appeal.

*The Workers Compensation Act is designed to promote compensation, not to prevent compensation.*

The Kansas Workers Compensation Act is liberally construed to help bring employers and employees within the provisions of the Act. K.S.A. 44-501b(a). The Act applies "to injuries sustained outside the state where: (1) The principal place of employment is within the state; or (2) the contract of employment was made within the state, unless such contract otherwise specifically provides." K.S.A. 44-506. In this case, the issue is whether the contract of employment was made in Kansas or Montana.

It is a general principle of Kansas law that a contract is made when and where the last act necessary for its formation is done. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 209, 4 P.3d 1149 (2000); *Abbey v. Cleveland Inspection Servs., Inc.*, 30 Kan. App. 2d 114, 118, 41 P.3d 297 (2002). The Fund contends that Henretty's contract of employment was contingent on Henretty moving to Montana. In the Fund's view, the last act in the formation of the contract took place in Montana when Henretty moved. Henretty contends the contract of employment was made when she signed and returned the written document to Northwest on July 25, 2008, in Kansas.

6

When the appellant argues the Board erroneously applied the law to undisputed facts, appellate courts exercise de novo review. *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017).

The Board's holding that an employment contract was made in Kansas is a factual finding. We review whether that finding is supported by substantial competent evidence. See *Shehane v. Station Casino*, 27 Kan. App. 2d 257, 261, 3 P.3d 551 (2000). We do not reweigh the evidence. *Speer v. Sammons Trucking*, 35 Kan. App. 2d 132, 140, 128 P.3d 984 (2006).

The fundamental rule of employment contract formation is simple. Employment is offered and then employment is accepted. And a contract is born. But circumstances change. Each case is unique. Several cases on the law of contract formation show how the law has grown as the facts change.

An employment contract may be formed during a simple phone call where an employer offers employment and the offer is immediately accepted, so long as the parties agree on essential terms. See *Wilkinson*, 269 Kan. at 210, 212-13. The place of contracting is where the acceptor speaks the acceptance. See *Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 707, 512 P.2d 438 (1973).

When an acceptance is authorized to be sent by mail, the place of contracting is where the acceptance is mailed. See *Shehane*, 27 Kan. App. 2d at 262; Restatement (First) of Conflict of Laws § 326 (1934).

In contrast, acceptance of an employment contract in some cases must be done by showing up to a particular location. For example, in *Davis v. Jacob Dold Packing Co.*, 140 Kan. 644, 38 P.2d 107 (1934), Davis was offered employment by letter to operate a new territory in New Mexico. Davis was at his home in Oklahoma. The letter told Davis

to be in New Mexico on a certain day. In response to the letter, Davis went to New Mexico. The court held Davis manifested acceptance of the employment contract by going to New Mexico. The place of contracting was New Mexico. 140 Kan. at 645-46.

Once again, in *Smith v. McBride & Dehmer Const. Co.*, 216 Kan. 76, 530 P.2d 1222 (1975), a worker had to show up for work to accept employment. Beatty was a construction manager for a job site in Oklahoma. Beatty needed to hire laborers and knew Smith was out of work. Smith lived in Kansas. Beatty told one of his laborers, Bowie, to notify Smith that if Smith wanted to go to work, he needed to show up at the job site in Oklahoma. Bowie so notified Smith. Bowie had no authority to hire Smith. The following day Smith showed up in Oklahoma and was put to work. 216 Kan. at 77-78. The district court held the employment contract was made in Oklahoma. 216 Kan. at 79. The Supreme Court affirmed. Beatty's offer of employment, as relayed through Bowie to Smith, fairly called for acceptance of employment by Smith reporting for work at the Oklahoma job site. 216 Kan. at 79-80.

A panel of this court distinguished the *Smith* holding in *Phillips v. Mann Steel Contractors*, No. 72,552, 1995 WL 18253055 (Kan. App. 1995) (unpublished opinion). In *Phillips*, an agent of Mann Steel Contractors called Phillips and relayed an offer of employment for an ironworker at a site in Missouri. Phillips was in Kansas. Phillips accepted the offer over the telephone. The Board found the employment contract was made in Kansas. Mann argued to a panel of this court that the communication was merely a notification of work and not an offer of employment. And Phillips' presence at the job site was the last act necessary to form the contract. The panel rejected the argument as contrary to the uncontroverted evidence. The contract was formed when Phillips accepted the offer over the telephone while in Kansas. 1995 WL 18253055, at *1, 3.

We distinguish this case from *Davis* and *Smith* because the facts are different. Here, the offer letter to Henretty specifically called for acceptance by signature and return

of the document, which Henretty did while in Kansas unlike the facts in *Davis* and *Smith* where the employment offer could be accepted only by the acceptor's physical presence at the job location. Henretty accepted the employment offer by signing and faxing the letter back to Northwest. We see an offer of employment and an acceptance of employment. We see a contract completed in Kansas. The Board was correct.

*We reject the Fund's claim that there was a condition precedent here.*

The Fund contends a condition precedent to enforcement of the employment contract was that Henretty move to Montana.

A review of the law is helpful at this point. There are two types of conditions precedent: conditions precedent to the formation of a contract and conditions precedent to performance under an existing contract. Conditions precedent to the formation of a contract involve issues of offer and acceptance that precede the formation of a contract. Conditions precedent to performance under an existing contract define an event that must occur before a right or obligation matures under the contract. Whether a condition is a condition precedent to formation of the contract or to performance under an existing contract is determined by the parties' intent. *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 47-48, 234 P.3d 833 (2010). A condition that occurs after a contract is formed that eliminates a party's obligations under the contract is also called a condition subsequent. *Schaben v. Central Kansas Medical Center*, No. 110,367, 2014 WL 2871389, at *4 (Kan. App. 2014) (unpublished opinion).

Two workers compensation cases offer contrasting views on conditions precedent. In *Shehane*, Shehane verbally accepted a job offer over the telephone from her home in Kansas. There was no mention of a drug test. Within a few days, Shehane received a written contract at her home. 27 Kan. App. 2d at 257-58. The contract stated that if Shehane failed to pass a drug test, the "'agreement shall be considered canceled and

9

terminated.'" 27 Kan. App. 2d at 258. Shehane completed the drug test in Missouri. 27 Kan. App. 2d at 258. The ALJ and the Board found the employment contract was made in Kansas. The drug screen was merely a basis for canceling the contract. 27 Kan. App. 2d at 260. A panel of this court affirmed. Shehane accepted the employment contract on the telephone and signed the contract in her home in Kansas. The drug screening was a condition subsequent to the contract. 27 Kan. App. 2d at 261-63. In other words, under these facts there was a contract, but it would have been voided if the worker later failed the drug screen.

Then, in *Speer*, the worker talked to Otis, a representative of a Montana trucking company, by telephone from his home in Kansas about a job as a truck driver. Speer offered to work for the company, but he said he needed a company truck, benefits, higher pay, and seniority credit. Otis, while in Montana, agreed to Speer's conditions. Speer was required to travel to Montana to pick up a company truck, attend orientation, sign paperwork, and take a drug test. 35 Kan. App. 2d at 134-35. The Board found the employment contract was made in Montana because Otis accepted Speer's conditions of employment in Montana. A panel of this court affirmed. 35 Kan. App. 2d at 141-42. The panel also found the passing of a drug test, attending orientation, and completing the required paperwork were conditions precedent to the employment contract coming into existence. Speer had admitted that passing the drug test was a condition he had to meet before he would be hired. 35 Kan. App. 2d at 144-45. In other words, under these facts the acceptance came in Montana and that is where the contract was completed.

Here, we hold that substantial competent evidence supports the Board's decision that the contract was made in Kansas. Henretty's relocation to Montana was not a condition precedent to the formation of this contract. Nothing in the offer letter stated that the contract's existence was contingent upon Henretty's move to Montana. She had to be in Montana to perform under the contract. But that does not mean it was not formed in Kansas.

10

The letter represented a detailed offer of employment. It stated that, "Upon receipt of your signed letter, your relocation check will be sent to you." Northwest paid Henretty the $5,000 in relocation funds promised in the contract before she moved to Montana.

The ALJ correctly stated, "Respondent's act of paying for Claimant's moving expenses is indicative that an employment contract had already been created." If that payment was not per the terms of an existing contract, Henretty could have stayed in Kansas and kept the money. Henretty also quit her job in Kansas and sold her house before moving to Montana. In turn, the Board looked at the intent of the parties and stated, "Claimant would not have quit her job in Wichita without the new job in Montana, she would not have sold her house without a new job, and Respondent would not have paid Claimant $5,000 without the new job in place."

We agree with the ALJ and the Board. This was a Kansas contract.

*We will address a due process claim by the Fund.*

The Fund argues that we should remand the case to determine whether the Full Faith and Credit Clause of Article IV of the United States Constitution and the Due Process Clause of the 14th Amendment preclude imposing liability on the Fund because Kansas lacks a sufficient connection to Henretty's injury. In other words, is Kansas required to refrain from hearing Henretty's workers compensation claim to give full faith and credit to the Montana workers compensation law? Henretty argues the Fund cannot raise this issue on appeal because it was not raised before the Board and therefore the Fund waived the issue. The Fund replies that it can raise this issue for the first time on appeal because it involves only a question of law that would be finally determinative of the case and resolution of the issue is necessary to serve the ends of justice and prevent the denial of a fundamental right.

11

The Fund's argument that this issue involves only a question of law that would resolve the case is belied by its original request for the court to remand the issue. But in its reply brief and at oral argument, the Fund changed its position and asked this court to resolve the issue in this appeal. We will.

At the heart of this appeal is an injured worker entitled to compensation and two states with differing workers compensation systems. Is one state required to submit to the other?

The United States Constitution places very few restraints on a state's ability to apply its own law or administrative process to a case. To satisfy the Due Process and Full Faith and Credit Clauses, Kansas only needs to have a "'significant contact or significant aggregation of contacts'" to the issues, "'creating state interests,'" to ensure that the choice of Kansas law and process is not arbitrary or unfair. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985). These contacts do not need to be extensive. In fact, the United States Supreme Court has noted that a person's residence in a state, when that person has ongoing needs related to the litigation, is a meaningful contact that can satisfy due process and full faith and credit. See *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 318-19, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981) (plurality opinion).

Various factors are relevant to a choice-of-law determination, including the procedural or substantive nature of the question involved, the residence of the parties involved, and the interest of the state in having its law applied. *In re K.M.H.*, 285 Kan. 53, 60, 169 P.3d 1025 (2007).

Courts do not balance the opposing state interests to resolve conflicts under the Full Faith and Credit Clause. Rather, "'it is frequently the case under the Full Faith and Credit Clause that a court can lawfully apply either the law of one State or the contrary

12

law of another.' [Citation omitted.]" *Franchise Tax Bd. of California v. Hyatt*, 538 U.S. 488, 496, 123 S. Ct. 1683, 155 L. Ed. 2d 702 (2003). A state need not "'substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' [Citations omitted.]" *Franchise Tax Bd. of California v. Hyatt*, 578 U.S. 171, 179, 136 S. Ct. 1277, 194 L. Ed. 2d 431 (2016).

We adopt those principles to guide our ruling. The Supreme Court has allowed states to give affirmative relief to injured workers despite due process and full faith and credit arguments. For example, in *Carroll v. Lanza*, 349 U.S. 408, 409-10, 75 S. Ct. 804, 99 L. Ed. 1183 (1955), it did not offend the Full Faith and Credit Clause for Carroll to seek common-law damages for an injury in Arkansas after receiving workers compensation in Missouri. Carroll was a resident of Missouri and the employment contract was made in Missouri. However, the work was done in Arkansas and the injury occurred in Arkansas. The court reasoned that "Arkansas, the State of the forum, is not adopting any policy of hostility to the public Acts of Missouri. It is choosing to apply its own rule of law to give affirmative relief for an action arising within its borders." 349 U.S. at 413. We note the importance of the contacts with each state that can affect the courts' decisions.

Then, in *Alaska Packers Assn v. Comm'n*, 294 U.S. 532, 537-38, 55 S. Ct. 518, 79 L. Ed. 1044 (1935), neither the Due Process Clause nor the Full Faith and Credit Clause prevented California from awarding compensation to an injured employee who was not a resident of California and where the work and injury occurred in Alaska. The contract of employment was entered into in California and the employer did business in California. The company employed workers in California for seasonal work in Alaska. 294 U.S. at 543, 550.

Here, the fact that the employment contract was made in Kansas is a significant contact with this state and should be sufficient on its own. See *Allstate Ins. Co.*, 449 U.S.

at 312-13. A state must have *a significant contact* or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair. We see nothing unfair under these circumstances. It has been the law of Kansas since 1927 that the Workers Compensation Act applied to injuries occurring outside the state where the contract of employment was made within the state. K.S.A. 44-506. The Fund was thus aware of the possibility, and it is not fundamentally unfair to impose liability on the Fund.

Kansas also has an interest in Henretty's claim because Henretty is a Kansas resident once again and intends to get medical care in Kansas for her injury. While a post-injury change of residence to the forum state is insufficient in and of itself to confer power on the forum state to choose its law, such a change of residence is relevant to the analysis. *Allstate Ins. Co.*, 449 U.S. at 319. After all, the state where the employee lives is where the impact of the injury will be most likely felt. *Crider v. Zurich Ins. Co.*, 380 U.S. 39, 41, 85 S. Ct. 769, 13 L. Ed. 2d 641 (1965).

With all of the contacts with Kansas, we hold that it does not offend the Constitution for Kansas law to apply here. The Kansas Workers Compensation Act contains its own choice of law rules, rejecting the doctrine of *lex loci delicti*—the law of the place of injury—governs. See K.S.A. 44-506; *Morrison*, 212 Kan. at 707; 99 C.J.S. Workers' Compensation § 83. And a forum state's application of its own workers compensation laws in an action involving multistate contacts and involving injury to a covered employee does not offend the Full Faith and Credit Clause. 82 Am. Jur. 2d Workers' Compensation § 32.

We see no full faith and credit problems here and find no due process concerns.

Affirmed.

14